Leo Dalbo v. Commissioner.
Dalbo v. Commissioner
Docket No. 659-68.
United States Tax Court
T.C. Memo 1969-220; 1969 Tax Ct. Memo LEXIS 76; 28 T.C.M. (CCH) 1171; T.C.M. (RIA) 69220; October 16, 1969. Filed Bill J. Robbins, for the petitioner. Ralph F. Keister, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency of $2,020.76 in the income tax of petitioner for the taxable year 1965 based on the failure *77 of petitioner to include the sum of $7,300 in his income for that year. The sole issue presented is whether petitioner was required to include the aforementioned sum which was received pursuant to an agreement entitled "Mutual Release and Discharge" between petitioner 1172 and his former employer in his income pursuant to section 61(a), I.R.C. 1954, [1] for taxable year 1965, or not. Findings of Fact Some of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Leo Dalbo (hereinafter referred to as petitioner) resided in Dearborn Heights, Michigan at the time he filed the petition herein. He filed his 1965 individual income tax return for the taxable year 1965 with the district director of internal revenue, Detroit, Michigan. Petitioner was employed as a certified school teacher by the Dearborn Township School District No. 8, Fractional, of Wayne County, Michigan (hereinafter referred to as the School District) from September 1959 to June 30, 1966. Petitioner's *78 employment was protected by the provisions of sections 15.1971 through 15.2056 of the Michigan Statutes Annotated, commonly referred to as the Tenure of Teachers Act. The Superintendent of Schools for the School District in 1965 was Dr. Roderick J. Smith. In April of that year, Dr. Smith in his capacity as superintendent recommended, in a letter to the School Board for the School District, that petitioner not be awarded a tenure contract for the ensuing school year. As provided by the Tenure of Teachers Act, the recommendation was based upon specific charges. [2]
Petitioner was served with the letter and charges at the direction of the School Board and pursuant to his rights under the Tenure of Teachers Act, petitioner, through his attorney, requested a hearing before the School Board on the charges asserted against him. [3] The hearing commenced on May 17, 1965. At that time additional charges [4] were attempted to be introduced stemming from actions which took place subsequent *79 to Dr. Smith's letter of April 1965. The hearing continued on May 20, 1965 and was suspended thereafter pending settlement negotiations between the parties. Prior to the hearing, petitioner was told by his attorney that there was the possibility of an action for defamation arising from Dr. Smith's letter, and the specified charges, and further that the additional charges sought to be introduced might also be defamatory in nature. However, no suit was or to the date of the trial herein has been instituted by petitioner in this regard. On May 27, 1965, the parties to the Tenure proceedings executed an agreement entitled "Mutual Release and Discharge" which was to be in settlement of various issues in dispute between them. [5] The document in part provided: Second party shall be paid in full the balance of his contract salary for the year ending June 30, 1965. Second party shall be paid in addition to said salary just above referenced the total sum of Eight Thousand ($8,000) Dollars in full *80 of any and all claims which second party now has, or ever has had in the past, or shall have against first party, and the referenced School District, and its Board members, agents, servants and employees, including, without limiting the generality of the foregoing, any salary claims, claims for accumulated sick or other leave days, and severance pay up to and including the 30th of June 1966. * * * In accordance with another provision of the Mutual Release and Discharge, petitioner submitted his resignation to the School Board which was accepted effective June 30, 1966 and entered on a leave of absence as of May 27, 1965. The general policies of the School District in effect at that time provided that all leaves of absence were to be without pay. Pursuant to the above quoted section of the Mutual Release and Discharge, a check was issued to petitioner for $7,300 bearing the date May 27, 1965. [6] Written on the stub of the check were the words "legal settlement." There were no deductions made from this payment for withholding or Federal Insurance *81 Contribution Act purposes. The amount of the check was charged to an administrative expense account by a 1173 bookkeeper for the School District, with the acquiescence of the Superintendent, Dr. Smith. It appears that this account was rarely used to record payments to teachers. Petitioner failed to include the $7,300 payment by the School District in his income for taxable year 1965. In the statutory notice of deficiency the Commissioner characterized the $7,300 as additional income and redetermined petitioner's tax liability for taxable year 1965 which resulted in a proposed deficiency of $2,020.76. Opinion The sole issue for our determination is whether the sum of $7,300 received by petitioner pursuant to the "Mutual Release and Discharge" constitutes taxable income. Petitioner contends that he is entitled to exclude this amount under section 104(a) (2), [7] I.R.C. 1954, because the money received represents damages by way of settlement for personal injury, i.e., defamation. Respondent contends *82 that the $7,300 received by petitioner is taxable income under section 61(a). [8] We do not agree with the petitioner and hold that the $7,300 payment constituted taxable income under the broad language of section 61(a). At the outset, we note that our decision in no way passes upon the validity of petitioner's claimed cause of action for defamation. As we stated in Tygart Valley Glass Co., 16 T.C. 941, 949 (1951), *83 also involving a settlement agreement: Though both parties have argued at some length as to the validity of * * * [the] claim, we consider it unnecessary to decide upon such validity, * * * for our question is not * * * [the] validity, but the nature, for tax purposes, of an amount received in settlement, which rests not upon the validity but upon the nature of the matter settled. * * * Thus we proceed to determine the nature of the matter settled. It is axiomatic that the Commissioner's determination is presumed to be correct and that the burden of proof rests upon the taxpayer to bring himself within any claimed exclusionary provision of the Code. We find that petitioner has failed to meet the burden placed upon him. The essential question in a case such as this is: What is "the 'basic reason' for the * * * payment," Agar v. Commissioner, 290 F. 2d 283 (C.A. 2, 1961); or phrased differently: What was "the intent of the payor as to the purpose in making the payment," Knuckles v. Commissioner, 349 F. 2d 610 (C.A. 10, 1965). To sustain his contention of excludability under section 104(a) (2), it is incumbent on petitioner to present evidence bearing *84 on the reason for or intent of the School District in making the payment. We find he has not done this. Since the Mutual Release and Discharge does not specifically mention the release of petitioner's alleged claim for defamation, we must look to the entire record to find evidence of the reason for the payment. Petitioner presented testimony from his attorney at the tenure hearing to the effect that consideration was given to the release of the possible defamation action. This testimony, however, is susceptible of varying interpretations as to exactly who considered the release of this alleged claim: the petitioner and his attorney; the attorney for petitioner and the attorneys for the School Board; the petitioner and his attorney and the School Board and its attorneys. In light of this ambiguity, we cannot say that the claim was specifically considered at any time by both parties during the negotiations. Furthermore, there is clear testimony from Dr. Smith and Stanley Beattie, one of the School Board's attorneys, that no claim for defamation was ever considered during the negotiations. See Agar v. Commissioner, supra, at 284. Such testimony makes it difficult to conclude *85 that there ever was a meeting of the minds of the parties on this claimed facet in connection with the release of petitioner's claimed cause of action. We note that even if we were to find a compromise of petitioner's claim, we could not hold that petitioner would be entitled to exclude the payment. The agreement between the parties makes no reference to 1174 any allocation of the total payment of $8,000, among any claims petitioner might have. [9] The only testimony relative to an allocation is that of petitioner himself. Upon such an indefinite record, we would be unable to allocate any part of the settlement as a nontaxable recovery by the petitioner and hence, petitioner would not be entitled to any exclusion. See Raytheon Production Corp., 1 T.C. 952 (1943), affd. 144 F. 2d 110 (C.A. 1, 1944). See also, Annabelle Candy Co. v. Commissioner, 314 F. 2d 1 (C.A. 9, 1962); Reuben H. Donnelley Corporation v. United States, 257 F. Supp. 747 (S.D.N.Y. 1966). *86 Petitioner asks us to examine the circumstances surrounding the actual payment of the $7,300 and conclude that they militate against a finding that the payment constituted taxable income. Petitioner cites the following in support of his contention: the payment was not made from a payroll account; there was no withholding of FICA deductions made and the words "legal settlement" were typed on the check stub. We do not feel that these instances are persuasive. As to the account from which payment was made, there is testimony from Dr. Smith that the payment of such a large sum of money was unusual and therefore would normally go through a non-payroll account since the School District's payroll was either weekly or biweekly. As to the lack of payroll deductions, the then bookkeeper for the School District testified that she arrived at the decision (not to make deductions) in light of the fact that the payment was charged to a non-payroll account. Finally as to the words "legal settlement," many payments can be so characterized and there is no evidence tending to show that such words related to petitioner's alleged defamation claim. The $7,300 was paid pursuant to the Mutual Release *87 and Discharge, a document of legal efficacy and it would not be unwarranted to denominate such payment as a legal settlement by way of a general description. Petitioner's next argument in support of his contention is that although there admittedly existed an employer-employee relationship until June 30, 1966, the $7,300 payment could not have been compensatory in nature because the School Board's own policy prohibited paid leaves of absence. Again, there is testimony from Dr. Smith to the effect that this policy was only a general guideline and could be varied by action of the School Board, although he did not have personal knowledge that the policy had been abrogated in May 1965. However, Dr. Smith did testify that the payment was an additional one beyond the contract period ending June 30, 1965, and coincided with the period of time of petitioner's leave of absence. True, this testimony does not specifically identify the reason for the payment, although it does state that the payment was related to petitioner's projected salary for the ensuing year. We feel it would be unwarranted to infer that this lack of specificity as to the reason for the payment is proof that it was for settlement *88 of petitioner's alleged claim of defamation. "Though petitioner may have believed that * * * [he was] paid * * * to avoid litigation * * * his belief was only evidence of the character of the payment; the ultimate inquiry is into the 'basic reason' for the * * * payment." Agar v. Commissioner, supra, at 284. Although the Commissioner has not adduced evidence showing that the payment was for a particular category of income enumerated in section 61(a), the burden of proof is not his, and under the broad construction of the statutory definition of income which recognizes "the intention of Congress to tax all gains except those specifically exempted," Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955), reh. den., it rested on petitioner to bring himself squarely within the exclusion to which he claims he is entitled. We are not satisfied that petitioner has sustained the burden of proof on his contention that the basic reason for the payment of the $7,300 was for settlement of his alleged claim for defamation. Accordingly, Decision will be entered for the respondent. 1175 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. Mich. Stats. Ann. Section 15.2002. We are unable to comment upon the nature of the charges due to the fact that although they were marked for identification at the trial, they are not in evidence.↩
3. Mich. Stats. Ann. Sections 15.2002, 15.2004. ↩
4. As noted supra, Footnote 2, the nature of these additional charges is not known since they were not offered in evidence at the trial.↩
5. The exact nature of these issues is not made clear by the agreement, nor is there any definite specificity revealed in the record.↩
6. The petitioner received the balance of the $8,000 at a later time. At the time of this payment deductions were made for withholding and FICA purposes.↩
7. SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS. (a) In General. - * * * gross income does not include - * * * (2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness; * * * Income Tax Regs., Section 1.104-1(c)↩ Damages received on account of personal injuries or sickness. * * * the term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. 8. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *↩
9. The only claims specifically enumerated in the agreement are those for "salary claims, claims for accumulated sick or other leave days, and severance pay up to and including the 30th of June 1966." However, this is preceded by general language stating that such enumeration is not exclusive.↩