LAWRYN W. MCKIM AND JUDY ANN MCKIM, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKim v. Commissioner
Docket No. 968-76.
United States Tax Court
T.C. Memo 1980-93; 1980 Tax Ct. Memo LEXIS 489; 40 T.C.M. (CCH) 9; T.C.M. (RIA) 80093; March 26, 1980, Filed *489 Held: Amounts received from settlement of a lawsuit represented claims for lost wages and are not excludable from income. Lawryn W. McKim and Judy Ann McKim, pro se. Marvin T. Scott, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $1,679.12 *490 in petitioners' income tax for the taxable year 1974. The only issue presented for our consideration is whether petitioners received taxable income in 1974 as a result of the settlement of a lawsuit brought in the District Court of Arapahoe County, Colorado, by petitioner-husband against his former employer. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners, Lawryn W. McKim and Judy Ann McKim, husband and wife, filed a joint Federal income tax return for the taxable year 1974. At the time they filed their petition herein, petitioners resided in Colorado. Since Judy Ann McKim is a petitioner solely by reason of her filing a joint return with her husband for the year in issue, references to petitioner will hereafter be considered as references to Lawryn McKim only. From about April 5, 1971 through March 27, 1974, petitioner was employed as a salesman by Elder-Quinn and McGill, Inc. (hereafter Elder-Quinn). Immediately after the termination of his employment, petitioner instituted suit against Elder-Quinn. The complaint alleged, in pertinent *491 part, as follows: FIRST CLAIM
* * *
5. That the Plaintiff has not been paid for the work performed and sales completed during the term of said Contract, and the Defendant has failed and refused to make proper payment to the Plaintiff, pursuant to the terms of said Contract. 6. That the unpaid commission/income amounts to an estimated minimum of $57,500, consisting of the following: (a) Commissions due and payable for equipment sold, but not delivered, prior to March 27, 1974, as well as over-charging of expenses and failure to fully reimburse expenses paid, which amount is estimated to be a minimum of $26,000. (b) Commissions due for equipment sold and delivered, but not paid, as well as over-charging of expenses and failure to fully reimburse expenses paid, which amount is estimated to be a minimum of $27,000. (c) Commissions due and payable for rental equipment, as well as over-charging of expenses and failure to fully reimburse expenses paid, which amount is estimated to be a minimum of $4,500. 7. That the commissions/income due and payable were knowingly, intentionally, and willfully withheld and not paid to the Plaintiff. 8. That as a result thereof, *492 the Plaintiff is entitled to a penalty as provided for by law in the amount of $28,750, as well as reasonable and necessary attorney fees in the amount of $15,000. * * *
SECOND CLAIM
* * *
4. That the Defendant knowingly and intentionally failed and refused to pay the income and commissions due to the Plaintiff, pursuant to the terms of said Agreement, as well as over-charging of expenses and failure to fully reimburse expenses paid, which amount is estimated to be a minimum of $30,000. 5. That as a result thereof, the Plaintiff is entitled to a penalty as provided for by law in the amount of $15,000, as well as reasonable and necessary attorney fees in the amount of $8,500. THIRD CLAIM
* * *
2. That the Defendant held out to the Plaintiff as a term of employment, a profit sharing and retirement plan, which along with the other promises and commitments herein, was employed as an enticement by the Defendant, to induce the Plaintiff to leave his former employment and associate with the Defendant. Plaintiff has an accrued interest therein in an estimated minimum amount of $3,000, which amount is due and owing to the Plaintiff, has been demanded *493 by him, and refused by the Defendant. In addition thereto, the Plaintiff has and will sustain a present, as well as future, loss of retirement time and benefits, both via employment with the Defendant and by loss of potential with future employment by being forced by the Defendant's actions herein to lose present seniority and start over again at the bottom of the business 'ladder'. 3. That as a result thereof, the Plaintiff is entitled to a penalty as provided for by law in the amount of $16,500, as well as reasonable and necessary attorney fees in the amount of $7,000. FOURTH CLAIM
* * *
The Defendant held out as a term of employment a promise and commitment that Plaintiff's moving expenses from Pittsburgh to Denver would be paid by the Defendant. The Plaintiff incurred such expenses in the amount of approximately $405, which were presented to the Defendant at the time, and demand made for payment thereof. However, Defendant failed and refused to pay such obligation. FIFTH CLAIM
* * *
2. That the Defendant has knowingly, wilfully, intentionally, wantonly, and recklessly engaged in such outrageous conduct, as set forth herein, so as to cause severe *494 physical suffering and emotional distress to the Plaintiff and his family, consisting of, but not limited to, serious and substantial disruption of his business, personal, and family affairs, all resulting from Defendant's reckless lack of care and concern for the Plaintiff, to his additional damage in the amount of $50,000. SIXTH CLAIM
* * *
2. That the Plaintiff has sustained a loss of vacation time, valued at and to his damage in the amount of $1,500. SEVENTH CLAIM
* * *
2. That at all times relevant hereto, the Defendant engaged in a course of wilful and wanton misconduct and disregard for the rights, feelings, and property of the Plaintiff; engaged in a wilful and intentional breach of contract; and knowingly and intentionally engaged in techniques of false promises, harassment and intimidation, resulting in physical suffering, severe emotional stress, and economic loss to the Plaintiff. 3. As a direct and proximate result of such wilful and wanton disregard by the Defendant for the rights, interests, feelings, and property of the Plaintiff, the Plaintiff has been further damaged and has sustained and/or is entitled to, exemplary and/or punitive *495 damages in the amount of $100,000. * * *
WHEREFORE, plaintiff demands judgment against the Defendant in the amount of $263,155 (Two Hundred Sixty-Three Thousand, One Hundred Fifty-Five Dollars) as compensatory damages; punitive and exemplary damages in the additional amount of $100,000 (One Hundred Thousand Dollars); for interest thereon; for recovery of all costs incurred herein, including, but not limited to, attorney fees, accountants' fees, expert witness fees, court costs, printing and duplicating costs; and for such other relief as to the Court may seem proper. On May 31, 1974, an out-of-court settlement was reached in which petitioner received $18,000 for executing a General Release from all claims. The release provided as follows: GENERAL RELEASE Lawryn W. McKim, joined by his attorney, Earl August Hauck, for and in consideration of the sum of $12,935.70 cash, * the receipt of which is hereby acknowledged, do hereby release and forever discharge Elder-Quinn & McGill, Inc., its officers, agents, employees and assigns, successors and/or representatives, although not specifically named herein, from any and all claims, demands, rights, penalties, expenses, causes *496 of action, attorneys' fees and benefits, past, present and future, opf whatsoever kind or nature arising out of or based on the allegations in McKim's Complaint in Civil Action No. 31923 in the District Court in and for the County of Arapahoe and State of Colorado, transferred to the District Court in and for the City and County of Denver as Civil Action No. C 44817. In entering into this final compromise, McKim and Hauck acknowledge that they rely and rely alone upon their own knowledge and information as to the extent and duration of the expenses arising from such incident, as well as the liability of the party herein released, and that they have not been influenced by any representations, [sic] if any, made by or on behalf of the party here released. Only the consideration stated herein has been paid or agreed to be paid for this release, it being the understanding of the parties herein the same is to constitute full and final settlement in release of any and all claims which McKim may have. The recitals mentioned herein are contractual and not mere recitals *497 and this compromise shall not be offered or admitted in any lawsuit hereinafter brought, nor this compromise or any part thereof shall be construed or used as an admission of liability on the part of Elder-Quinn & McGill, Inc., said compromise being made without prejudice to any of the rights of said Elder-Quinn & McGill, Inc. Felix Mitchell, the General Sales Manager of the Equipment Division and Vice-President of Elder-Quinn, was petitioner's superior at Elder-Quinn. Mitchell helped negotiate the settlement and provided information on sales, profits, and commissions to Fairfield and Woods, the law firm representing Elder-Quinn in the lawsuit. Mitchell arrived at the $18,000 settlement figure by reference to the total sales made by petitioner for which he had not received commissions. Mitchell believed that petitioner was entitled to commissions based only upon the amount of goods sold which had been actually delivered and was owed only $7,000 or $8,000 at the time he resigned. Based upon petitioner's gross sales, without regard to whether the goods sold would have been delivered, however, petitioner would have earned commissions of approximately $25,000-$28,000. Fairfield *498 and Woods advised Mitchell that a court might find in favor of petitioner on this issue. In order to avoid litigating the issue of whether a salesman was entitled to a commission based upon gross sales or only upon the amount of goods sold which were actually delivered, Elder-Quinn settled the suit. Moreover, had Elder-Quinn lost on this issue, it may have had adverse effects on its employment contracts with other employees. Elder-Quinn reflected the $18,000 as employee compensation in a W-2 form which it issued to petitioner, and petitioner included the full $18,000 in income on his 1974 return. At the time the case was settled, there had been no discussion that Elder-Quinn would withhold any amounts for tax purposes. Petitioner believed the settlement amount represented a pro rata settlement of the various claims alleged in the lawsuit. On this basis, he deducted $7,000, representing that portion of the award which he believed reflected nontaxable compensation for personal injuries, as a "cost of income collection." [1] Respondent disallowed the deduction in full. *499 OPINION Section 104(a)(2)[2] excludes from gross income "the amount of any damages received (w hether by suit or agreement) on account of personal injuries or sickness." The law is settled that petitioner must show the nature of the claim which was the actual basis for settlement, not the validity of the claim, Seay v. Commissioner,58 T.C. 32 (1972); Tygart Valley Glass Co. v. Commissioner,16 T.C. 941, 949 (1951), the proper inquiry being: in lieu of what were damages awarded? Entwicklungs & Finanzierungs A.G. v. Commissioner,68 T.C. 749, 759 (1977); Yates Industries, Inc. v. Commissioner,58 T.C. 961, 972 (1972); affd. without published opinion 480 F.2d 920 (3rd Cir. 1973); Young v. Commissioner,16 T.C. 1424 (1951). If an award of damages for breach of an employment contract was in the nature of compensation or otherwise in lieu of income, section 104 does not apply and the amounts received are taxable. Hodge v. Commissioner,64 T.C. 616 (1975); Henry v. Commissioner,62 T.C. 605 (1974); *500 State Fish Corp. v. Commissioner,48 T.C. 465, 472 (1967), supp. opinion 49 T.C. 13 (1967); Estate of Stearns v. Commissioner,14 T.C. 420 (1950), affd. 189 F.2d 259 (6th Cir. 1951). See also Knuckles v. Commissioner,349 F.2d 610 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Agar v. Commissioner,290 F.2d 283 (2nd Cir. 1961), affg. T.C. Memo. 1960-21. Damages awarded for a personal injury resulting from an improper termination of employment, however, are tax-free payments received for personal injury. Knuckles v. Commissioner,supra;Seay v. Commissioner,supra.
The nature of the payments depends upon the intent with which they were made, which in the final analysis is a question of fact to be decided from a consideration of all the factors surrounding the payment. Knuckles v. Commissioner,supra, at 613; Agar v. Commissioner,supra, at 284; Seay v. Commissioner,supra. *501 [3]
Elder-Quinn settled the suit in order to prevent litigation of the issue of whether a salesman is entitled to a commission based upon gross sales rather than upon the amount of goods sold which were actually delivered. Based upon gross sales, petitioner would have earned between $25,000 and $28,000 in commissions, but based upon the sales of goods actually delivered petitioner would have earned only $7,000 or $8,000. [4] The suit was settled for $18,000. This prevented a possible decision adverse to Elder-Quinn on this issue which would not only have affected this suit but its other sales persons' employment contracts as well. The settlement was based, therefore, on petitioner's claims for compensation.Moreover, Mitchell testified that he did not believe his company had any exposure to liability for any claims for personal damages and that these claims did not figure into the settlement amount. *502 We also believe it is significant, although not dispositive, that Elder-Quinn withheld Federal and State income taxes and FICA tax from the settlement award. This goes far to support respondent's position that the amounts were always treated as compensation by Elder-Quinn. Moreover, despite petitioner's contention that the withholding was not discussed during the negotiations, the release which petitioner executed specifically provided for the taxes to be withheld. In the absence of prior agreement with Elder-Quinn, it seems unlikely that petitioner would have accepted the withholding of income taxes from a payment which he did not consider to be taxable income. On these facts, we hold that, although petitioner may have made a claim for personal injuries as well as for commissions earned (and punitive damages), he has not established that the nature of the claim was for personal injuries or that Elder-Quinn made any payment in settlement of such a claim. Even if we were to find that Elder-Quinn compromised all of the allegations in the complaint petitioner would still not be entitled to exclude the payment. The release between the parties makes no reference to any allocation *503 of the $18,000. The only testimony relative to an allocation was that of petitioner, who stated that he believed the award represented a pro rata settlement of the various claims alleged in the complaint. [5] Upon this record, we cannot allocate any part of the settlement. Seay v. Commissioner,supra, at 38. [6]
*504 Decision will be entered for the respondent. Footnotes
*. Computed as follows - Gross: $18,000.00 3,600.00 federal withholding 564.30 FICA 900.00 Colorado withholding↩
1. It appears that petitioner did not actually incur any expenses in pursuing the lawsuit; at the least, it is clear that the amount claimed as a deduction here reflects part of the settlement amount. The correct treatment of the $7,000, assuming it was an award for personal injuries, would have been to exclude it from income, rather than to deduct it. Both parties treat the $7,000 as an exclusion from income on brief.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
3. See also Gunderson v. Commissioner,T.C. Memo. 1979-99; Dalbo v. Commissioner,T.C. Memo. 1969-220↩. Petitioner contends that these cases use an erroneous standard to deternube taxability. We decline, however, to overrule these cases.
4. Petitioner contends that if Elder-Quinn believed only $7,000 or $8,000 was owed petitioner for commissions, the remainder of the award must have been in settlement of the personal injuries. We disagree. The negotiations revolved around the amount of commissions due petitioner. To avoid losing on this issue and having to pay $25,000-$28,000, Elder-Quinn settled the suit. As in many settlements, petitioner accepted less than what he believed he was owed and Elder-Quinn paid more than it believed it owed.↩
5. Even if the settlement was prorated, only a small portion would be excluded from income. The first paragraph of the complaint alleged damages for unpaid commissions of $57,500, punitive damages for failure to pay the commissions of $28,750 and attorney fees of $15,000. All of these amounts, including the punitive damages, Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955), rehearing denied 349 U.S. 925 (1955), and the attorneys fees (although presumably deductible) would be included in income. The second paragraph alleged unreimbursed expenses of $30,000, which would be includable in income (although presumably deductible, see section 1.162-17, Income Tax Regs.), and punitive damages of $15,000 for failure to pay the reimbursed expenses and attorney fees of $8,500, both of which would be included in income. The third paragraph alleged damages of $3,000 for retirement benefits, and since it is unclear if this amount represented employee contributions it, too, would be taxable; punitive damages of $16,500 and attorney fees of $7,000 would also be included in income. The fourth paragraph alleged damages of $405 for unreimbursed moving expenses. These amounts would also be taxable. (Cf. Sec. 82). The fifth paragraph alleged personal injury of $50,000 and would appear to present a claim for damages which would be excludable under section 104. The sixth paragraph alleged damages for lost vacation time valued at $1,500. This would not be excluded under section 104. The seventh and final claim alleges $100,000 punitive damages as the result, in part, of the personal injuries allegedly suffered.As noted before, this is not excludable from income under the rationale of Commissioner v. Glenshaw Glass Co.,supra.
Thus, of the total $333,155 of damages alleged, at best only $50,000 represents a nontaxable recovery under section 104↩. The remaining $283,155 represents a taxable recovery. (The complaint showed $263,155 as the total amount asked as compensatory damages, plus $100,000 for punitive damages; the $263,155 appears to be a mathematical error; the total should be $233,155.) Therefore, even if we considered it appropriate to so allocate the settlement amount, which we do not, only 15 percent ( 50,000)/(333,155) of the $18,000, or $2,700 would be nontaxable.
6. Dalbo v. Commissioner,T.C. Memo. 1969-220↩.