O.S.C. CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O. S. C. Corp. v. Commissioner
Docket No. 16840-79.
United States Tax Court
T.C. Memo 1982-280; 1982 Tax Ct. Memo LEXIS 464; 43 T.C.M. (CCH) 1430; T.C.M. (RIA) 82280; May 20, 1982. Willard D. Horwich, for the petitioner. James M. Eastman, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Taxable Year Ended
Deficiency
March 31, 1976
$ 39,957
March 31, 1977
30,541
Concessions having been made, the issues for decision are 1) whether any part of an antitrust suit settlement received by petitioner during its taxable year ending March 31, 1976, is excludible *465 from income under section 104(a)(2)[1] as damages received "on account of personal injuries" and 2) whether petitioner is entitled to deductions for compensation paid to its vice president, Liliane Ravel, in the taxable years ending March 31, 1976, and March 31, 1977, in excess of the amounts allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioner is a California corporation whose principal office was at Los Angeles, California, at the time of the filing of the petition in this case. Petitioner O.S.C. Corporation (hereinafter "O.S.C.") was incorporated in March 1969 to carry on the business formerly conducted by Francis Ravel as a sole proprietorship under the name Olympic Sales Company. Francis Ravel caused O.S.C. to be incorporated, and up to the time of trial has been its only stockholder. During the periods in suit he was its president. At all times from its incorporation through the time of trial, Francis *466 Ravel was active on a full-time basis in the management of the business of O.S.C. and dominated and controlled the day-to-day business and activities of O.S.C. and its wholly owned subsidiaries. In 1969 O.S.C. formed a wholly owned subsidiary, Galaxy Stores, Inc. (hereinafter "Galaxy"). Galaxy and O.S.C. filed consolidated income tax returns during the taxable years at issue in this case. Galaxy was only one of several subsidiaries of O.S.C. in those years. Galaxy was formed for the purpose of implementing a marketing concept developed by Francis Ravel. Galaxy was to supply merchandise, primarily adding machines, typewriters, calculators and other office machines, to various retails sales outlets to be known as Galaxy Stores. In return, the retail stores were to pay Galaxy for the merchandise received and to reimbursed Galaxy for the expenses of a cooperative advertising program designed to promote Galaxy Stores. During 1969, Galaxy entered into five or six agreements for the establishment of retail sales outlets. One of the suppliers of merchandise to Galaxy Stores was Toshiba America, Inc. (hereinafter "Toshiba"). Early in the history of O.S.C., Toshiba suspected *467 that petitioner was selling Toshiba products at discount prices in violation of an agreement between the two corporations that Toshiba products would only be sold at list price. A dispute arose and eventually Toshiba stopped delivering its products, electronic calculators, to petitioner. Petitioner was unable to secure an alternative source of electronic calculators. Feeling that without electronic calculators, Galaxy Stores could not be profitable, petitioner then closed down all the Galaxy Stores. On June 16, 1971, petitioner and another of its wholly owned subsidiaries commenced a suit against Toshiba and Tokyo Shibaura Electric Co., Ltd. in the United States District Court for the Central District of California, No. 71-1430. Tokyo Shibaura Electric Co., Ltd. was later dismissed as a defendant, leaving only Toshiba as a defendant. The complaint in the Toshiba suit pleaded two causes of action: the first in antitrust and the second in breach of contract. Under the antitrust cause of action, the complaint stated, interalia:
13. As a result of the unlawful conduct alleged hereinabove, Plaintiffs have been injured in that: (a) They have been deprived of profits *468 they otherwise would have earned and realized; (b) The value of their business has been substantially lessened and destroyed; (c) They have sustained a loss in the value of their good will; (d) They ahve (sic) incurred expenses that otherwise would not have been incurred. 14. Plaintiffs do not presently know the precise extent of their damages but estimate said amount to be in excess of $ 750,000. * * * The plaintiffs sought treble damages under this cause of action. Under the breach of contract cause of action, the complaint stated, interalia:
23. Throughout the years mentioned, Plaintiffs' margin of profit on electronic calculators purchased from Defendants and re-sold by Plaintiffs averaged $ 50 per machine. 24. As a direct and proximate result of Defendants' breach of contract and refusal to deliver and sell to Plaintiffs all of the electronic calculators ordered and available for delivery, Plaintiffs sustained damage in the sum of $ 170,550 which represents the profit Plaintiffs would have realized on the re-sale of the said machines. Plaintiffs sought judgment in the amount of $ 170,550 on this cause of action.
None of the following documents *469 prepared by or on behalf of petitioner in the district court suit referred to damages for loss of reputation or injury to reputation as being at issue: Plaintiffs Contentions of Fact and Law (dated March 4, 1974), Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment (dated April 4, 1974), Affidavit of Francis Ravel (dated April 4, 1974) or Memorandum for Settlement Conference (dated November 14, 1974). Rather, the descriptions of the nature of the injuries allegedly sustained and the damages sought were confined to those items enumerated in the complaint. In a letter to defendant's attorney regarding the district court case, dated October 10, 1974, plaintiffs' attorney wrote: I have been considering the matters you and I discussed, and the idea of a possible tax-free recovery on the basis of loss of goodwill is most interesting. I discussed the matter with my client, and he also believes that there may be an opportunity for some fruitful settlement discussions. The letter went on to discuss damages of lost profits and income and lost goodwill. In an Agreement of Settlement of the district court suit, dated January 10, 1975, Toshiba agreed *470 to pay the plaintiffs $ 130,000. The Agreement of Settlement went on to allocate $ 15,000 of this payment for "profits lost by plaintiffs," $ 15,000 for "damages to the good will of plaintiffs" and $ 100,000 for "injury to and loss of plaintiffs' business reputation resulting from plaintiff's (sic) inability to continue and to promote the activities of plaintiff's (sic) Galaxy Stores, Inc., subsidiary." Sometime during its taxable year ended March 31, 1976, petitioner received the $ 130,000 agreed to in the Settlement Agreement with Toshiba. On its consolidated income tax return for that year, petitioner treated the receipt of $ 104,000 ($ 130,000 less attorney's fees of $ 26,000) as a non-taxable receipt of " amounts received in settlement of litigation of business reputation." In the statutory notice of deficiency, respondent asserted that $ 89,000 of the $ 104,000 net recovery represented taxable capital gain to petitioner and that $ 15,000 of the recovery represented taxable ordinary income (attributable to the $ 15,000 Settlement Agreement allocation for lost profits.) Petitioner now concedes that $ 15,000 of the recovery from Toshiba was taxable as ordinary income in the *471 year received. During the years before the Court, Liliane Ravel, the wife of Francis Ravel, held the titles of vice president of O.S.C. and its subsidiaries O.S.C. Corporation of California and National Market Search. During the taxable years ended March 31, 1976, and March 31, 1977, the O.S.C. consolidated group paid Liliane Ravel a total of $ 15,120 and $ 14,800, respectively, for which it claimed personal services expense deductions. On its consolidated income tax return for the taxable year ended March 31, 1976, petitioner made no entry for Liliane Ravel under the column headed "Time devoted to business." On its consolidated income tax return for the taxable year ended March 31, 1977, petitioner's entry for Liliane Ravel under the column "Time devoted to business" was "Part." Liliane Ravel's main work for petitioner was the supervision of the design of petitioner's annual catalog. She did the rough overall design of the catalog; but a professional printer would do all the finishing work on the catalog, including the artwork and the camera work. It took roughly two months to prepare a complete catalog. Liliane Ravel had no professional skills in graphics or design. Liliane *472 Ravel did not work full-time for petitioner. She would come to work at petitioner's offices on average one or two hours a week. Liliane Ravel regularly entertained clients and potential clients of O.S.C. at her home. Liliane Ravel traveled with her husband to conventions and electronics shows. Liliane Ravel belonged to a charitable organization, Achievement Reward for Colored Scientists (hereinafter "ARCS"), in which the wives of several large clients of petitioner were also members. No business of O.S.C. was ever discussed at the meetings of ARCS. Liliane Ravel did not negotiate on behalf of petitioner or enter into any contracts on behalf of petitioner during the years at issue. During the years at issue, petitioner's three highest paid employees, other than Francis and Liliane Ravel were: 1) Elsie Swanson, petitioner's secretary and treasurer, who was paid $ 21,080 and $ 19,540 for the taxable years ended March 31, 1976, and March 31, 1977, respectively, 2) Rosa Rugrose, petitioner's chief accountant, who received about $ 15,000 or $ 16,000 in each of those years and 3) Heidi Aboud, an assistant accountant, who was paid about $ 13,000 per year. Each of these three *473 employees worked for petitioner full-time. Each of petitioner's clerical staff during the years at issue was paid $ 700 to $ 800 per month ($ 8,400 to $ 9,600 per year). Respondent disallowed the compensation paid to Liliane Ravel in petitioner's taxable years ending March 31, 1976, and March 31, 1977, to the extent it exceeded $ 2,500 in each year. Up to the time of trial, O.S.C. had never declared any dividends. On or about October 24, 1980, petitioner timely filed claims for refund, Forms 1120X, for its taxable years ended March 31, 1976 and March 31, 1977. Those claims sought refunds for those years based on carrybacks to those years of a reported net operating loss from petitioner's taxable year ended March 31, 1979. Petitioner incurred a net operating loss of $ 256,572 in its taxable year ended March 31, 1979. Petitioner is entitled to net operating loss deduction carrybacks to its taxable years ended March 31, 1976 and March 31, 1977, from its taxable year ended March 31, 1979, in the aggregate amount of $ 256,572. OPINION The first issue for decision is the includibility or excludability from income of $ 89,000 of the settlement recovery petitioner received *474 from Toshiba. Respondent argues that the $ 89,000 is taxable as capital gain because it is income within the meaning of section 61. Petitioner argues that though it may be income under section 61, it is excludable from gross income as "damages received (whether by suit or agreement) on account of personal injuries" within the meaning of section 104(a)(2). Petitioner claims that the $ 89,000 was a payment to it for harm to its reputation and that compensation for harm to one's reputation is compensation for a personal injury under section 104(a)(2). We disagree. We are unconvinced that the damages here paid were to compensate petitioner for injuries to its reputation, as opposed to being paid for injuries to its goodwill and for loss of future profits. In a case such as this, it is the petitioner's burden to prove the nature of the claim which was the actual basis of settlement. Seay v. Commissioner,58 T.C. 32, 37 (1972). The nature of the claim is a question of fact to be decided from a consideration of all the factors surrounding the actual payment. Knuckles v. Commissioner,349 F.2d 610 (10th Cir. 1965), *475 affg. a Memorandum Opinion of this Court; Agar v. Commissioner,290 F.2d 283 (2d Cir. 1961), affg. per curiam a Memorandum Opinion of this Court. The crucial inquiry is into the intent of the payor. Knuckles v. Commissioner,supra;Agar v. Commissioner,supra; Glynn v. Commissioner,76 T.C. 116 (1981), affd. in an unpublished opinion (1st Cir., March 30, 1982). In the instant case, petitioner argues that the allocation in the settlement agreement signed by Toshiba is determinative of the intent of Toshiba to compensate it for injury to its reputation. We disagree. Petitioner has presented no evidence which indicates that loss of reputation was ever an issue in the Toshiba suit prior to the signing of the settlement agreement. [2] Except for the settlement agreement, none of the court records from the Toshiba litigation makes any mention of injury to petitioner's reputation. Rather, these documents focus on lost profits, damaged goodwill and unrecovered expenses as the plaintiffs' damages from the alleged breach of contract and antitrust violations. *476 It is apparent from the letter dated October 10, 1974, that the decision to allocate substantially the largest part of the Toshiba settlement to damages to reputation was an afterthought devised by petitioner's attorney to enable the parties to reach an acceptable settlement figure. By in effect agreeing that the dollars received would be after-tax dollars, plaintiffs were able to reduce their settlement demands to a range acceptable to Toshiba. We decline to sanction such a transparent attempt to avoid income taxes legally due. Accordingly, we find that the intent of Toshiba in fact was to compensate petitioner for lost profits, damage to good-will and unrecovered expenses and not for damaged reputation. Having reached this conclusion, we need not reach respondent's other arguments that damages for injury to business (as opposed to personal) reputation are not excludable under section 104(a)(2)[3] or that a corporation may never suffer a "personal" injury within the meaning of that section. *477 Therefore, the $ 89,000 of net proceeds from the settlement of the Toshiba litigation was reportable by petitioner as income in its taxable year ending March 31, 1976. [4]
The second issue for decision is whether petitioner is entitled to deductions for compensation paid to its vice president, Liliane Ravel, in the taxable years ending March 31, 1976, and March 31, 1977, in excess of the amounts allowed by respondent. Petitioner paid Liliane Ravel $ 15,120 and $ 14,800 respectively for her services in those years. Respondent has disallowed all but $ 2,500 of these deductions in each of the two years. On this issue, the petitioner bears the burden of proving that it is entitled to the deductions claimed. Botany Worsted Mills v. United States,278 U.S. 282 (1929). Whether *478 the requirements for deductibility are met is a question of fact to be determined in light of all the facts and circumstances of each case. Pacific Grains, Inc. v. Commissioner,399 F.2d 603, 605 (9th Cir. 1968), affg. a Memorandum Opinion of this Court. On this record, we hold that petitioner has failed to demonstrate its entitlement to ordinary and necessary business deductions for the services of Liliane Ravel in excess of the amounts allowed by respondent in each of the two years at issue. Among the relevant factors to consider in deciding whether amounts of compensation for services were reasonable are the following: the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; and the salary policy of the taxpayer as to all employees. Mayson Mfg. Co. v. Commissioner,178 F.2d 115, 119 (6th Cir. 1949), *479 revg. a Memorandum Opinion of this Court. Petitioner has presented no evidence on a number of these factors -- such as, the prevailing rates of compensation for comparable positions in comparable concerns -- and only vague and conclusory evidence on most of the remaining factors. The evidence presented, such as it is, however, does not favor petitioner's case. First, in regard to the nature, extent and scope of Liliane Ravel's work, we note that such work was part-time, did not require her presence in petitioner's offices more than one or two hours a week and consisted principally of aiding a professional printer in composing petitioner's once-yearly catalog. [5]
*480 Second, Liliane Ravel had no professional skills in graphics or design. Third, she was paid a salary for her part-time services commensurate with the salaries of the three most highly paid employees of O.S.C. (excluding Francis Ravel), all of whom worked full-time for O.S.C. Her salaries were almost twice those of petitioner's full-time clerical staff during the years at issue. Obviously, petitioner's salary payments to Liliane Ravel were inconsistent with its general salary policy toward its employees during the taxable years ending March 31, 1976, and March 31, 1977. Finally, O.S.C. had, up to the time of trial in this case, never declared a dividend. In light of these facts, and given the unsatisfactory nature of the evidence presented, we think Liliane Ravel was entitled to no more than the $ 2,500 of compensation respondent allowed for her services to petitioner in each of the years at issue. Consequently, respondent's disallowances of part of petitioner's deductions for salaries paid to Liliane Ravel in those years are sustained. As a result of computational issues raised by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years before the Court.↩
2. At trial petitioner went to great lengths to present evidence on how its reputation was in actual fact damaged by Toshiba's conduct. Petitioner failed to present evidence, however, that this damage to its reputation was ever made known to Toshiba during the course of the suit.↩
3. Cf. Glynn v. Commissioner,supra, and Agar v. Commissioner,T.C. Memo. 1960-21, affd. on a related issue 290 F.2d 283↩ (2d Cir. 1961).
4. Since respondent has treated the $ 89,000 of net proceeds as capital gain and petitioner does not argue that such treatment is incorrect assuming 104(a)(2) does not apply, we express no opinion as to whether the proceeds should in fact be treated as a capital item or an ordinary income item.↩
5. Petitioner claims, in addition, that Liliane Ravel, as part of her job with O.S.C., entertained clients of O.S.C. at home regularly.While we find that some entertaining of this sort was performed during the years at issue, the testimony in this regard was very unsatisfactory, neither providing the Court with a description of the duties involved in this entertaining or with specifics regarding the frequency of such entertaining. On this vague record we are unable to attribute any value to these services. Another part of Liliane Ravel's work, according to petitioner, was to join a charitable organization, ARCS, and fraternize with wives of O.S.C.'s clients. Presumably this would bring in more business for O.S.C. Despite petitioner's attempt to characterize Liliane Ravel's membership in ARCS as part of her employment with O.S.C., we think that her reasons for joining ARCS were wholly personal and not attributable to the business of O.S.C. (We note that at trial Liliane Ravel admitted no business of O.S.C. was ever discussed at ARCS meetings.)↩