T.C. Memo. 1997-559


UNITED STATES TAX COURT


STANLEY AND GAIL LABER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14800-96.                    Filed December 22, 1997.


Stanley and Gail Laber, pro sese.

<u>Claire R. McKenzie</u>, for respondent.


MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined a deficiency in petitioners' Federal income tax for

---

[1]     Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

the year 1992 in the amount of $2,640. The issue for decision is whether petitioners may exclude from gross income under section 104(a)(2) the $11,000 received by Stanley Laber (petitioner) from his former employer pursuant to a settlement agreement.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Lincolnwood, Illinois, at the time that they filed their petition.

Around 1986, petitioner accepted a position as head of information management and logistics with a division of the U.S. of the Army Corps of Engineers (referred to sometimes as the Army) in Chicago, Illinois. In this position, petitioner reported to a military officer, the deputy to Colonel Franco. Petitioner also had some contact with Colonel Franco, and these interactions were the cause of some conflict.

Petitioner is a practicing Orthodox Jew. Petitioner felt that Colonel Franco created a hostile work environment and that he was particularly antagonistic toward petitioner as a result of petitioner's religious faith. On one occasion, petitioner's co-workers attempted unsuccessfully to contact him at home on a Saturday to report a problem within his area of responsibility. Petitioner perceived that Colonel Franco viewed petitioner's

observation of the Saturday Sabbath as a lack of dedication to his job.

Petitioner suffers from asthma. His condition was apparently exacerbated by the circumstances at work. Petitioner experienced other physical ailments, including kidney stones and depression while working for the Army.

During petitioner's employment with the Army, petitioner filed numerous Equal Employment Opportunity (EEO) complaints and Merit System Protection Board (MSPB) appeals. The record contains eight EEO complaints filed by petitioner between March 27, 1991, and July 29, 1992. Petitioner alleged that he was the victim of various forms of discrimination including religious, retaliation, sex, and age. Four of the complaints were filed with respect to activity that occurred on or before November 21, 1991. In five of the complaints petitioner alleged that he was not considered or selected for a position or the opening was withdrawn because of, among other things, his religion and his past propensity to file EEO complaints. In these complaints, petitioner sought corrective action in the form of: "the position I applied for"; "the position or similar position and any other benefit I would have had, absent the discrimination"; "to be made whole absent the discrimination"; "to be made whole absent the discrimination such as the position with back pay"; and "all the benefits that would have been granted absent the

discrimination and restoration of priority consideration".  In two of the complaints petitioner alleged that the EEO office discriminated against him as reprisal for his filing previous complaints.  In the remaining complaint, petitioner alleged that in December 1988, Colonel Franco ordered him to attend a Christmas party and that he did not receive administrative leave because he did not attend.  As corrective action in the complaint petitioner requested that the policy be changed "to exclude religion".

On November 12, 1992, petitioner and the Department of the Army entered into a negotiated settlement agreement.  The settlement agreement states:

1.  In the interest of promoting its Equal Employment Opportunity Program and to avoid protracted litigation, the Army and the Complainant agree to settle ALL matters involved in any and all informal or formal EEO complaints and Merit System Protection Board appeals in any stage whatsoever, including but not limited to matters before the Equal Employment Opportunity Commissioner and the Federal courts, filed by the Complainant against the United States Army Corps of Engineers, Chicago District and the North Central Division and the complainant authorizes the immediate dismissal of all such complaints or appeals complaints without cost to the Army Corps of Engineers, including dismissal at the Agency level, Equal Employment Opportunity, or Federal court levels.
* * *
3.  In consideration for the settlement of the above noted EEO complaints the complainant agrees not to apply for any position at either the Chicago District or the North Central Division for the period of six (6) years from the date of this Agreement.
4.  By entering this agreement, the Army does not admit that it has violated the Civil Rights Act of 1964, as amended, or any other Federal or State statute or regulation.

By the terms of the agreement, petitioner was paid $11,000 in consideration for the settlement of the EEO complaints and MSPB appeals.

Sandy Soloman, regional counsel for the Army, drafted the settlement agreement. Petitioners were paid $11,000 by the Army on December 1, 1992. Petitioners did not include any of the settlement proceeds in gross income reported on their Federal income tax return filed for 1992. In the notice of deficiency, respondent increased petitioners' taxable income by $11,000 to reflect the amount of settlement proceeds received by petitioners from the Army.

Petitioners contend that the settlement proceeds were paid to petitioner to settle his claims for damages for personal injuries and that the $11,000 is excludable from income under section 104(a)(2).

Respondent's determination is presumed correct, and petitioners bear the burden of proving it erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 61 broadly defines gross income to include all income from whatever source derived, except as otherwise provided. Statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Section 104(a)(2) provides that gross income does not include "the amount of any damages received (whether by suit or

by agreement * * * ) on account of personal injuries or sickness".  Section 1.104-1(c), Income Tax Regs., provides that the term "damages received" "means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of prosecution." Petitioner's settlement proceeds may be excluded from gross income only if petitioners show that:  (1) the underlying cause of action giving rise to the recovery is based upon tort or tort type rights and (2) the damages were received on account of personal injuries or sickness.  Commissioner v. Schleier, supra at 337.

Whether damages received pursuant to a settlement agreement are excludable under section 104(a)(2) depends on the nature of the underlying claim, not the validity of such claim.  United States v. Burke, 504 U.S. 229, 237 (1992).  Determination of the nature of the claim is factual.  Bagley v. Commissioner, 105 T.C. 396 (1995), affd. 121 F.3d 393 (8th Cir. 1997).  Where the settlement agreement lacks express language stating what the payment was made on account of, the most important element is the intent of the payor.  Knuckles v. Commissioner, 349 F.2d 610 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995).

A tort is a "'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'" United States v. Burke, supra at 234 (quoting Keeton et al., Prosser and Keeton on the Law of Torts 2 (5th ed. 1984)). Tort remedies may redress intangible elements of injury that are deemed important, even though not pecuniary in their immediate consequences. Id. at 235. These injuries may include emotional distress, personal humiliation, and mental anguish. Id. at 235-236.

In United States v. Burke, supra, the Supreme Court held that recoveries received for the settlement of claims based on Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 253, are not excludable from gross income under section 104(a)(2) because the Act did not provide remedies for personal injuries. In Commissioner v. Schleier, supra, the Supreme Court held that recoveries for claims based on the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602, are not excludable from gross income because the ADEA provides no compensation "for any of the traditional harms associated with personal injury." Id. at 336. Effective November 21, 1991, Congress amended title VII to permit the recovery of compensatory and punitive damages for certain violations. Civil Rights Act of 1991, Pub. L. 102-166, sec. 102, 105 Stat. 1071, 1072-1073.

Four of petitioner's EEO claims allege discriminatory conduct that potentially violates the Civil Rights Acts of 1964 and the ADEA. Thus, assuming arguendo, the settlement proceeds were received as a result of these claims, to such extent the proceeds would not be excludable from petitioners' gross income. More importantly, petitioners have failed to establish that any portion of the settlement proceeds was received on account of physical injury or sickness and thus excludable from income under section 104(a)(2).

The settlement agreement does not expressly state what specific claims the agreement covered. However, considering the record as a whole, we do not think the Army intended to compensate petitioner for physical or emotional injury. Mr. Soloman testified that his primary intent was to prevent petitioner from filing any additional costly complaints for a reasonable period of time and to offer sufficient compensation to satisfy petitioner. Mr. Soloman recalled that petitioner had 11 outstanding claims, 10 EEO claims, and 1 MSPB appeal at the time that the settlement was reached. Each claim costs the Army somewhere between $3,000 and $5,000 to investigate and resolve. Mr. Soloman testified that although the claims were without merit, he thought $11,000 was fair as measured by $1,000 per claim, and that no one claim was any more compelling than another.

Petitioners testified that petitioner suffered physical injuries while working for the Army. Mr. Soloman testified that he had no knowledge of petitioner's sustaining any medical, physical, or mental injuries, nor did petitioner present him with evidence of medical expenses. Furthermore, none of the eight EEO complaints contained in the record alleges that petitioner incurred any type of physical injury or sickness as a result of the alleged discriminatory conduct. Petitioner also testified that he had taken the initial steps to file a lawsuit against Colonel Franco for slander; however, the record contains no documentary evidence of this claim. Mr. Soloman was not aware of any claim by petitioner that Colonel Franco had committed slander.

Petitioners have not established that any portion of the $11,000 received pursuant to petitioner's settlement agreement with the Army is excludable from gross income. Therefore, respondent is sustained on this issue.

We have considered all arguments by the parties, and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.