Mason K. KNUCKLES and Bernice A. Knuckles, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7846.

United States Court of Appeals Tenth Circuit.

Aug. 17, 1965.

William R. Bagby, Lexington, Ky., for petitioners.

Anthony Z. Roisman, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, on the brief), for respondent.

Before PHILLIPS, LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

Petitioners, husband and wife,[1] by this petition for review seek to reverse a decision of the Tax Court sustaining a deficiency income tax assessment for the year 1959 in the amount of $9,081.00.

On March 25, 1957, petitioner Mason K. Knuckles entered into an employment contract, effective as of November 1, 1956, with the Perpetual Life Insurance Company (hereafter referred to as Perpetual) located in Denver, Colorado. The contract employed him in an executive capacity for a period of five years and he was to receive a salary of not less than $20,597.50 per year at the monthly rate of $1,716.45. In addition, he was to receive, or in event of his death his wife or estate would receive, the sum of $225.31 per month from the time he reaches age 65 until his death or the expiration of ten years whichever is longer. This pension or retirement payment by the company was funded with a $50,000 ten-pay life insurance policy on the life of petitioner which required the company to pay a $4,402.50 premium each year. Perpetual was the beneficiary of this policy and had all the incidents of ownership therein. So far as is here material, the contract of employment also provided that the petitioner's employment may be terminated by a majority of Perpetual's board of directors although the salary was to continue for the five year period. Furthermore, if his employment was terminated by the board of directors, Perpetual was to continue payments into the insurance fund and the policy was to be kept in effect until November, 1961.

In 1958, the board of directors of Perpetual reached the conclusion that Knuckles had mismanaged the affairs of the company to the extent that its continued existence was imperiled. Some of the directors attempted, without success, to procure Knuckles' resignation. Finally, on December 1, 1958, the board, by formal resolution, terminated the contract of employment on the ground that Knuckles was incompetent to manage the affairs of the company. Knuckles denied his incompetency and refused to accede to the board's resolution. On March 4, 1959, Knuckles commenced a suit upon his contract of employment against Perpetual with the summons stating in part that the action was brought to recover "the amount of $73,282.00 for Defendant's breach of its March 25, 1957 employment contract with Plaintiff." The filing of a complaint in the case was delayed by agreement between the parties pending the taking of depositions of several members of Perpetual's board of directors. During this time settlement

---

1. Bernice Knuckles is a party here by virtue of having filed a joint return for the tax year 1959 with her spouse.

negotiations between the parties were in progress. At all times pertinent Knuckles was deeply concerned about the effect of the controversy upon his future ability to obtain employment and insisted that any settlement made vindicate him in the eyes of the public. On May 20, the board of directors of Perpetual, by formal motion, accepted Knuckles' offer of settlement, which included a cash payment to Knuckles in the amount of $20,000 and an agreement by Perpetual to pay the eight remaining annual premiums on the life insurance policy included in the employment contract. The attorney for Perpetual was authorized to effectuate the settlement by proper legal instruments.

During the course of the settlement negotiations Knuckles became emotionally disturbed and believed that his health had been impaired because of the pending controversy. In May, counsel for Knuckles first suggested that Perpetual permit recovery on the basis of a tort claim for personal injury because of the tax advantage to his client. Perpetual, at this time and during all of the negotiations, refused to recognize any liability in tort on its part to Knuckles.

The settlement agreement, as outlined by Perpetual's board of directors' motion of May 20, was finalized by formal agreement dated July 15. Between these dates negotiations between counsel were carried on in an effort to arrive at a solution of the problem posed by Knuckles insistence upon the settlement being based on his claimed personal injuries and Perpetual's vehement denial of any liability because of personal injuries. Perpetual also refused to permit an allocation, by the settlement agreement, of the amount to be paid for Knuckles' tax advantage. However, Knuckles was finally permitted to institute a suit based upon Perpetual's liability for personal injury and then to dismiss the suit with prejudice. Perpetual also, by agreement with Knuckles, removed from its records the resolution of December 1, terminating Knuckles' contract for the reasons stated and replaced it with a resolution merely terminating the contract but without stating the reasons.

The Tax Court, after making particular findings of fact, made the ultimate finding that the "Amounts paid to or in behalf of petitioner in pursuance of his settlement agreement with Perpetual represented in part compensation due him under a contract of employment and in part damages due him for injury to his business reputation." In accord therewith the deficiency in income tax for 1959 in the amount of $9,081.00, as assessed by the Commissioner, was sustained.

The sole question is whether the amount of money received by taxpayer, Mason K. Knuckles, in settlement of a claim against his former employer was money received as damages for personal injuries and hence not includible in income under section 104(a) of the Internal Revenue Code (26 U.S.C.A. § 104(a).

Section 61(a) of the Internal Revenue Code provides: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *." Section 104(a) specifies that:

"Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—
(2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness; * * *."

■ We observe at the outset that this is purely a fact case and that we cannot overturn the findings of fact made by the Tax Court unless we are able to conclude that they are clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Anson v. C. I. R., 10 Cir., 328 F.2d 703.

■■ We agree with respondent that unless the payments made to the taxpayer were "received * * * on ac-

count of personal injuries" the amount paid is includible in his gross income. The most important fact in making that determination, in the absence of an express personal injury settlement agreement, is the intent of the payor as to the purpose in making the payment. Agar v. C. I. R., 2d Cir., 290 F.2d 283. In this connection, the evidence shows that Perpetual did not, at any time, acknowledge any possible liability for personal injuries to Knuckles and in fact consistently denied any such liability. No proof was ever presented to Perpetual of the existence of any personal injuries from which it could evaluate a proper settlement. The Tax Court expressly found that the settlement payment was made by Perpetual because "the board felt settlement with petitioner had to be effectuated because the publicity incident to a trial of petitioner's claims would * * * endanger the continued existence of Perpetual." This important finding has full support in the testimony of the attorney for Perpetual as well as in the minutes of Perpetual's board of directors.

Other important findings by the Tax Court that have ample supporting evidence are: "Petitioner's primary purpose in instituting suit against Perpetual was to collect amounts due him under his employment contract;" that Knuckles became "increasingly concerned with his inability to obtain employment in the insurance field and with the fact that he no longer enjoyed his former good reputation in his community;" that Knuckles consistently "refused to make any settlement except under such basis that he would be vindicated 'in the eyes of the public and the insurance world;'" that no mention of any claim for personal injuries was made by petitioner's counsel until May, 1959, which was about the same time as a settlement figure had been agreed upon and was over two months after the suit on the employment contract was instituted; petitioner's counsel, at that time, mentioned his client's tax advantage, if the settlement was based on personal injuries; Perpetual,

at the time of settlement, refused to make any allocation of the agreed settlement amount solely for petitioner's tax advantage; and "that the amounts paid petitioner * * * were to release that company from any possible liability under its employment contract and that petitioner's insistence upon settlement based on a tort claim for personal injury was an afterthought brought into being by the possible tax advantage which might result."

After a careful consideration of the record before us, we must conclude that the Tax Court's findings of fact are supported by the evidence. It is true that petitioner's contention finds some support in his own testimony and the testimony of his two attorneys but the Tax Court also had the testimony of Perpetual's attorney. His testimony together with the exhibits received in evidence in the case constitutes sufficient evidence to support the findings.

The decision of the Tax Court is affirmed.