WADE E. CHURCH AND MARGARET CHURCH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15630–80.     Filed June 20, 1983.

*A. Donald Chaney* and *Jay I. Bartz*, for the petitioners.
*Michael Kevin Phalin*, for the respondent.

## OPINION

FAY, *Judge*: Respondent determined a $177,995.70 deficiency in petitioners' 1976 Federal income tax. The only issues for our decision are (1) whether petitioner Wade E. Church is entitled to exclude from his gross income compensatory damages of $250,000 received as a result of a favorable jury verdict in a defamation suit, and (2) the extent to which attorneys' fees and costs paid in the course of litigation are deductible.

All the facts are stipulated and found accordingly.

Petitioners Wade E. Church and Margaret Church resided in Phoenix, Ariz., at the time their petition was filed herein.

In 1958, Wade E. Church (petitioner) was elected to the office of attorney general for the State of Arizona for a term of 2 years commencing January 1, 1959. On May 7, 1959, petitioner addressed the American Federation of Labor convention in Flagstaff, Ariz. He delivered his speech before some 500 to 600 delegates to the convention as well as various members of the news media. The speech dealt with what petitioner perceived as a problem of public concern, namely, the excessive influence of certain lobbyist groups upon the Arizona State Legislature.

In response to petitioner's speech, a front-page editorial appeared in the Monday, May 11, 1959, edition of the Arizona Republic under the heading "Communism and Mr. Church." The editorial made various references by which petitioner was tied to communism. The Arizona Republic is a daily newspaper

published in Phoenix, Ariz., and is distributed throughout the State.

Petitioner filed a complaint for libel against Phoenix Newspapers Inc., publisher of the Arizona Republic.[1] Petitioner's amended complaint sought compensatory damages of $250,000 and punitive damages of $250,000. After protracted litigation, petitioner's suit was heard by a jury in Maricopa County Superior Court from June 9, 1971, through June 16, 1971. The jury awarded petitioner compensatory damages of $250,000 and punitive damages of $235,000. The jury gave no indication of the basis upon which they arrived at the award. The verdict and award were affirmed by the Arizona Court of Appeals on July 15, 1975.

In 1976, petitioner received full payment for the award plus interest in the amount of $140,872.71. He also paid attorneys' fees and court costs of $253,568.85 in connection with the suit. The issues are the taxability of the awards for both compensatory and punitive damages, and the deductibility of the costs of litigation. Due to respondent's concession (see note 7 *infra*), we need only address the taxability of the compensatory damages.

### Compensatory Damages

Section 104(a)(2)[2] excludes from income any damages received on account of personal injuries or sickness. Petitioners contend the $250,000 jury award herein was based on personal injury within the meaning of section 104(a)(2). Respondent contends that our recent decision in *Roemer v. Commissioner*, 79 T.C. 398 (1982), on appeal (9th Cir., Nov. 15, 1982), mandates a result in his favor. We find the facts in *Roemer v. Commissioner, supra,* clearly distinguishable, and, further, we hold for petitioners.

Damages received on account of personal injuries or sickness are not limited to physical trauma but include mental pain and suffering. *Seay v. Commissioner,* 58 T.C. 32 (1972); *Hawkins v. Commissioner,* 6 B.T.A. 1023 (1927); sec. 1.104–1(c), Income Tax Regs., cf *Roemer v. Commissioner, supra.* The tax

---

[1] The record does not disclose the date of filing of the original complaint. Petitioner's amended complaint was filed on Mar. 16, 1962.

[2] All section references are to the Internal Revenue Code of 1954 as amended.

consequences of an award depend on the nature of the litigation and the claims adjudicated. *Woodward v. Commissioner*, 397 U.S. 572 (1970); *United States v. Gilmore*, 372 U.S. 39 (1963). The proper inquiry is in lieu of what are the damages awarded. *Fono v. Commissioner*, 79 T.C. 680 (1982); *Roemer v. Commissioner, supra; Wolfson v. Commissioner*, 651 F.2d 1228 (6th Cir. 1981), affg. and remanding T.C. Memo. 1978-445; *Raytheon Production Corp. v. Commissioner*, 144 F.2d 110, 113 (1st Cir. 1944), affg. 1 T.C. 952 (1943). To ascertain the nature of the damages, it is necessary in this case to examine the allegations contained in petitioner's original and amended complaints, the evidence presented, and the arguments made in the State court proceeding.[3]

Petitioner's amended complaint sought compensatory damages of $250,000 and alleged that, at the time of publication, defendants knew petitioner enjoyed an excellent reputation both as a private citizen and as a public officer, and the editorial was published for the purpose of ruining that reputation. The amended complaint further alleged that defendants did maliciously expose petitioner to—

public hatred, contempt, ridicule and obliquy [sic] and did deprive him of public confidence and embarrass him publicly,

and as a result petitioner had suffered—

an enormous amount of embarrassment humiliation and mental agony, and has been held in contempt, calumny and ridicule and as a consequence thereof, has been exceedingly nervous and upset, and further, said article was published by the defendants through ill will and maliciousness toward the plaintiff and with the intent, design and purpose on the part of said defendants to injure plaintiff in his official standing and reputation.

Petitioner told the jury how it had been his dream to become a lawyer and to devote his life to a career in public service. He testified:

the most effective way to destroy a public candidate is to call him a communist. He is through as far as public life is concerned.

Petitioner experienced the wounded feelings, the loneliness, and the mental anguish that go along with being ostracized by the public. He felt guilt for the adverse effect it had on his

---

[3]This material is reflected in both the pleadings and in 682 pages of trial transcript.

family. He suffered the indignity of numerous anonymous phone calls, and his home was openly referred to as the Kremlin.

Upon reviewing the pleadings, the evidence, and the agreements made at the State trial, it is apparent the entire thrust of petitioner's case was how the libelous editorial affected him personally. He was compensated for the great public embarrassment and humiliation he experienced and the emotional distress, the pain, and the suffering he underwent upon being labeled a "communist." Although a substantial portion of the award was intended to compensate petitioner for the loss of a professional career devoted to politics and public service, we find, as more fully discussed below, the award herein was nonetheless received on account of personal injuries within the meaning of section 104(a)(2).

The facts in this case and those presented in *Roemer v. Commissioner, supra*, are so clearly distinguishable that *Roemer* simply cannot control. In *Roemer*, the taxpayer was a successful insurance broker who was issued a defamatory credit report in connection with his application to sell life insurance. We held the entire $40,000 award was taxable since it represented damages in the form of lost insurance profits. This Court and others have consistently held that amounts received in lieu of wages, salary, or lost profits are includable in income. *Fono v. Commissioner*, 79 T.C. 680 (1982); *Roemer v. Commissioner, supra*; *Glynn v. Commissioner*, 76 T.C. 116 (1981), affd. 676 F.2d 682 (1st Cir. 1982); *Knuckles v. Commissioner*, 349 F.2d 610 (10th Cir. 1965), affg. a Memorandum Opinion of this Court. In marked contrast, there was absolutely no allegation made in the pleadings and no evidence was presented at the State trial concerning petitioner's loss of income.[4] Moreover, the taxpayer in *Roemer* said little, if anything, about how the defamatory credit report affected his

---

[4]In his closing arguments, petitioner's counsel made passing reference to the fact that petitioner's income was limited in later years in the private practice of law. However, it is obvious petitioner did not go to trial on the basis of how the editorial may have affected his income, and it is equally clear the jury did not intend to compensate him for any such loss.

Had petitioner incurred a loss of past or future income, we have no doubt he would have attempted to prove such damages and thereby increase his recovery. Moreover, it may be that petitioner had no real claim for reduced income if he earned more in private practice than as a public official.

personal affairs whereas the entire thrust of petitioner's case was how being labeled a "communist" hurt him personally.

Nevertheless, respondent contends that under the test set forth in *Roemer v. Commissioner, supra,* the entire award herein is taxable. In *Roemer,* we held a distinction must be made between injury to personal reputation and injury to business and professional reputation, "*to the extent [the injury] has affected or may affect [the taxpayer's] income.*" *Roemer v. Commissioner, supra* at 406. (Emphasis added.) Since publication of the editorial ended petitioner's political career and destroyed his dream of a career in public service, respondent concludes the damages herein were awarded for injury to his professional reputation; thus, respondent concludes the award is taxable under the test set forth in *Roemer.* With respect to this case, however, respondent applies that test much too broadly.

It is simply not enough that the injury arose in connection with the taxpayer's business or his professional endeavor, or that the injury is somehow remotely "capable" of affecting his income.[5] Even though the editorial destroyed petitioner's career as a public servant and it marked the end of a promising political career, it did not take away his career as an attorney. Moreover, to the extent petitioner's professional reputation was damaged, we find no basis for distinguishing between that injury and the mental distress, pain, and suffering that flowed therefrom. That he was a public figure simply compounded the pain. In our opinion, shattered dreams, ruined careers, and the mental anguish that follow are just as personal as, for instance, loss of limb. As we have noted, the test is in lieu of what were the damages awarded, and it is the intent of the payor that controls. *Fono v. Commissioner,* 79 T.C. 680 (1982); *Knuckles v. Commissioner,* 349 F.2d 610 (10th Cir. 1965), affg. a Memorandum Opinion of

---

[5]In *Seay v. Commissioner,* 58 T.C. 32 (1972), the taxpayer was dismissed from his employment as an officer of a corporation. He received $60,000 as the equivalent of salary for breach of the employment contract and an additional $45,000 for damages caused by adverse newspaper publicity. The taxpayer properly reported the $60,000 as ordinary income. With respect to the $45,000, we found it was for personal embarrassment, mental and physical strain, and injury to health and personal reputation in the community; thus, despite the fact that the claim arose in connection with his employment, we held the entire $45,000 was on account of personal injury within the meaning of sec. 104(a)(2).

this Court. The distinction in this case is that the jury in this defamation proceeding simply did not intend to compensate petitioner for injury to his professional or business reputation to the extent it affected past or future income. *Roemer v. Commissioner*, 79 T.C. 398 (1982).

In summary, we find the award herein was intended to compensate petitioner for the mental pain and suffering he experienced as the result of the malicious publication of a newspaper editorial labeling him a "communist."[6] Even the money award cannot erase the stigma petitioner must carry for the rest of his life. We hold the entire $250,000 compensatory damages is exempt from income since it was received on account of personal injury within the meaning of section 104(a)(2).[7]

## Attorneys' Fees and Costs

The attorneys' fees and costs herein are not deductible as ordinary and necessary business expenses under section 162. See *Kleinschmidt v. Commissioner*, 12 T.C. 921 (1949). To the extent these expenses are allocable to the interest portion of the award, however, they are deductible under section 212(1) as an expense incurred for the production of income. To the extent they are allocable to exempt income, they are nonde-

---

[6]As a point of historical significance only, we are reminded of the "McCarthy era" which was marked by a prolonged and intense political upheaval that shook this country in the mid-1950's. The overriding issue was anti-communism, and the central character was Joseph R. McCarthy, a U.S. Senator from Wisconsin (1946–57). Opponents of McCarthy coined the term "McCarthyism" describing the political practice of publicizing accusations of disloyalty or subversion with insufficient regard to evidence.

[7]Respondent acknowledges that if this Court should find any of the damages, compensatory or punitive, were received on account of personal injury, then, consistent with Rev. Rul. 75–45, 1975–1 C.B. 47, such damages should be excluded from gross income pursuant to sec. 104(a)(2). Respondent does not argue that the punitive damages should be included in income regardless of the nature of the underlying compensatory damages. As he did in *Roemer v. Commissioner*, 79 T.C. 398 (1982), on appeal (9th Cir., Nov. 15, 1982), respondent, in his administrative discretion, has chosen to allow punitive damages to be excluded from gross income in the same manner as the underlying compensatory damages, provided they arise out of personal injury. We have found that the compensatory damages in this case arise out of personal injury, thus, we read respondent's position as a concession that the punitive damages are likewise on account of personal injury. Given his concession, we hold the $235,000 punitive damage award is likewise excludable.

Since in *Roemer v. Commissioner, supra,* the underlying compensatory damages were intended to reimburse the taxpayer for lost profits, it followed that the punitive damages were not awarded "on account of personal injuries."

ductible under section 265(1). Thus, due to our holding that part of the total award is exempt from income, the $253,568.85 in attorneys' fees and court costs must be allocated between the exempt portion and the non-exempt portion of the award. The proper allocation results in a section 212(1) deduction of $57,073.80.[8]

To reflect the foregoing,

*Decision will be entered under Rule 155.*