ELMER A. MADSON AND HAZIL MADSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Madson v. Commissioner
Docket No. 26275-83.
United States Tax Court
T.C. Memo 1988-325; 1988 Tax Ct. Memo LEXIS 353; 55 T.C.M. (CCH) 1351; T.C.M. (RIA) 88325; July 27, 1988. Steven J. Madson, for the petitioners. Joseph R. Peters, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $ 5,863. The sole issue *354 we must decide is whether any portion of a $ 41,000 settlement payment received by petitioner, Elmer Madson, represents an amount excludable from his gross income under section 104(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. The petitioners are husband and wife and resided in Green Bay, Wisconsin, at the time of the petition herein was filed. Petitioners' income tax return for 1980 was filed with the Internal Revenue Service Center in Kansas City, Missouri. The notice of deficiency related to this 1980 return was mailed to petitioners on June 16, 1983. The notice determined that for that year petitioners had additional income in the amount of $ 41,000 and additional itemized deductions totalling $ 17,150 [2] -- $ 15,179 of this $ 17,150 total represented legal expenses. The resulting tax deficiency equalled $ 5,863. *355 Mr. Madson was a former agent of the Federal Bureau of Investigation and the police chief of Green Bay, Wisconsin. He held this latter position from 1961 until July 6, 1977, when he was forced to retire at age 60. Subsequent to his termination, Mr. Madson sued the City of Green Bay for denying him equal protection of the laws under the United States Constitution as made applicable to the states by the Fourteenth Amendment. The alternative claim in Mr. Madson's suit was that the city had breached its contract with him to employ him as police chief until he reached age 65. After a trial on the merits, the Wisconsin Circuit Court held that Green Bay had denied Mr. Madson the right of equal protection by compelling him to retire at the age of 60 when that city continued to employ other police and fire persons who had similarly attained that age. This denial, the court found, was a tort-type claim and had the effect of terminating Mr. Madson's employment with Green Bay. Moreover, the state court held that the City had breached its employment contract with the former *356 police chief. In fashioning an appropriate remedy, the Wisconsin court pointed out that the damages to which Mr. Madson was entitled would be the same under either the equal protection claim or the breach of contract claim. These damages equalled Mr. Madson's full pecuniary losses which flowed directly and necessarily from the termination of his employment and, thus, reflected his loss of earnings and loss of state retirement and social security benefits. [3] Based on the evidence, the state court awarded Mr. Madson $ 60,000. The City appealed this Wisconsin court's decision. During the appeal, Mr. Madson and Green Bay settled the case for $ 41,000. [4] Throughout the duration of the dispute with the City, Mr. Madson and his wife were subjected to personal criticism, public embarrassment, and harassment. [5]
*357 In settling the case, petitioners executed a release in January of 1980. Under the release, both Mr. and Mrs. Madson disavowed all claims they had against the City arising out of Mr. Madson's termination of employment. The general release, however, provided no indication as to the particular nature of the individual claims being released. Green Bay's insurance carrier, Great American Insurance Company ("Great American"), issued a check to Mr. Madson [6] in the amount of $ 41,000. The check indicated that the payment was for "bodily injury" occurring on an "accident date" of "07 06 77", the date of Mr. Madson's termination. Neither the City of Green Bay nor the insurance company treated the $ 41,000 payment to Mr. Madson as taxable income to him. Furthermore, in his acquisition of the settlement payment, Mr. Madson received no retirement credits from the State of Wisconsin's Public Employee's Retirement Fund. Green Bay's insurance policy with Great American provided for the coverage of bodily injury, property damage, and personal injuries resulting from discrimination. The policy, *358 however, did not provide for Great American's payment of money on the City's breach of contract. On September 10, 1984, petitioners filed a motion for summary judgment with our Court. In their motion, petitioners argued that Mr. Madson's received $ 41,000 sum represented amounts properly excludable from gross income under section 104(a)(2). We denied this motion in our opinion, Madson v. Commissioner,T.C. Memo. 1985-3. Because petitioners had failed to produce any pleadings, memoranda, briefs, or trials testimony tied to the State proceedings and had failed to provide a copy of the written settlement agreement, we decided that the record at that time lacked evidence which we needed to make the necessary factual determination mandated by petitioner's motion. OPINION We must decide whether any portion of the $ 41,000 settlement payment represents an amount excludable from gross income under section 104(a)(2). Respondent contends that the full $ 41,000 settlement payment represents amounts properly includable in gross income. Petitioners primarily argue that the full settlement amount is properly excludable under section 104(a)(2). Were we to hold that the *359 full amount was not properly excludable, petitioners alternatively argue that we should divide the settlement amount between the tort-type equal protection claim and the breach of contract claim. We accept petitioners' primary argument. Section 61(a) states that, except as otherwise provided, gross income means "all income from whatever source derived." Section 104(a)(2) [7] provides otherwise, in that it excludes from gross income damages received on account of personal injuries or sickness. However, the Internal Revenue Code of 1954 does not explain what a taxpayer must show in order to prove that the damages were received "on account of personal injuries." Seay v. Commissioner,58 T.C. 32, 36, (1972). Section 1.104-1(c), Income Tax Regs., provides that "The *360 term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution"; thus, it is not necessary that the damages be on account of physical trauma. Church v. Commissioner,80 T.C. 1104, 1106 (1983). The essential element of an exclusion under section 104(a)(2) is that the damages must derive from some sort of tort or tort-type claim against the payor. Glynn v. Commissioner,76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); sec. 1.104-1(c), Income Tax Regs.
Section 104(a)(2) encompasses situations where the damages received are "by suit or agreement." In the context of a settlement agreement, determining the exclusion from gross income depends on the nature of the claim which was the actual basis for settlement, not the validity of the claim ( Seay v. Commissioner,58 T.C. at 37), the proper inquiry being in lieu of what were damages awarded. Church v. Commissioner,80 T.C. at 1107; *361 Yates Industries, Inc. v. Commissioner,58 T.C. 961, 972 (1972), affd. without published opinion 480 F.2d 920 (3d Cir. 1973). If the settlement agreement lacks express language stating that the payment was or was not made on account of a personal injury, then the most important fact in determining how section 104(a)(2) is to be applied is "the intent of the payor" as to the purpose in making the payment. Byrne v. Commissioner,90 T.C. 1000, 1007 (1988); Knuckles v. Commissioner,349 F.2d 610 (10th Cir. 1965), affg. a Memorandum Opinion of this Court; Fono v. Commissioner,79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); Glynn v. Commissioner,76 T.C. at 120. Such intent is necessarily factually grounded and must be discerned from an inquiry into all the facts and circumstances surrounding the actual payment. Cf. Seay v. Commissioner,58 T.C. at 37; Knuckles v. Commissioner,349 F.2d at 612. In the case before us, the settlement agreement contains no language stating that the payment was or was not *362 made on account of a personal injury. However, a close examination of the facts tied to the payment of the settlement amount reveals that the entire amount was paid in satisfaction of the equal protection claim, a tort-type claim. [8] In this instance, the City of Green Bay, the payor, turned to its insurance carrier to obtain the funds to satisfy its settlement debt to Mr. Madson. Both the City and its insurance carrier were well aware that the policy the City carried with Great America did not cover the payment of damages tied to the City's breach of contract obligations. In making payment on the policy, therefore, the insurance company was obviously operating under its obligation to pay amounts tied to the City's tortious acts. The company so noted this obligation through notations stated that the payment was for an injury Mr. Madson received from an accident occurring on the date that he was unlawfully discharged from his employment. Other facts revealing Green Bay's intent to treat the entire $ 41,000 payment as a payment for a tort-type claim can be found in the City's failure to treat in any manner the $ 41,000 payment as taxable income to Mr. Madson and in its failure to *363 credit Mr. Madson's account with the Wisconsin Public Employees Retirement Fund. That the entire settlement payment represents a payment related to a tort-type claim comports with the lower Wisconsin court's decision and damages determination. We look to the decision and determination because, as precursors to the settlement agreement, these offer evidence as to the actual basis underlying the settlement agreement. The Wisconsin court noted that Green Bay's violation of Mr. Madson's civil rights effectively resulted in the City's breach of its contract with Mr. Madson. The court went on to say that the value *364 of damages tied to this consequent breach of contract equalled the value of damages tied to the City's violation of Mr. Madson's equal protection rights. In determining a damage amount, [9] the Wisconsin court, thus, fashioned an award which could be allocated wholly to the equal protection rights claim or wholly to the breach of contract claim, or could be divided in some fashion between the two claims. The lower court, however, made no specific allocation. [10]
*365 The division between claims, therefore, rested in the hands of the parties to the settlement agreement. As revealed in the actions of the city, the settling parties chose to treat all such damage amounts paid to Mr. Madson as amounts paid in satisfaction of the city's tortious violation of his equal protection rights. Consequently, the entire $ 41,000 settlement payment is excludable from the Madson's gross income under section 104(a)(2). To reflect the foregoing, Decision will be entered under Rule 155.
[11]
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and rule references are to the Tax Court Rules of Practices and Procedures. ↩
2. This $ 17,150 amount appeared in the notice of deficiency, and no portion of this sum is in dispute. ↩
3. In deciding on a damages amount, the Wisconsin court stated that it valued Mr. Madson's loss by considering "[his] past earnings, inflation, present value of money, pension, and social security benefits." ↩
4. The discussion of the denial of equal protection claim and breach of contract claim presented in the complaint, trial brief, and post-trial briefs, indicates a 72 percent average discussion of the equal protection claim and 28 percent for the contract claim. The specific percentages are as follows: Pleadings and Briefs
Tort
Contract
Complaint
63%
37%
Trial Briefs:
Plaintiff (petitioners herein)
67%
33%
Defendants
96%
4%
Post-Trial Briefs
Plaintiff
83%
17%
Defendant
70%
30%
Plaintiff's Reply
55%
45%
Seventy-five percent of the Wisconsin judge's opinion related to a discussion of the denial of equal protection claim. Twenty-five percent of this opinion dealt with the breach of contract claim. The City of Green Bay appealed the decision of the trial court. The appeal briefs indicate a discussion content of 68 percent on the tort claim and 32 percent on the breach of contract claim. The specific percentages are as follows: ↩
Appeal Briefs
Tort
Contract
Appellant (defendant)
67%
33%
Respondent (plaintiff or
58%
42%
petitioners herein)
Appellant Reply
80%
20%
5. Newspaper articles discussing Mr. Madson's suit and settlement appeared in a number of Green Bay newspapers. Additional, a cartoon featuring Mr. Madson appeared in the Green Bay News Chronicle, and an unflattering editorial focusing on Mr. Madson and the suit appeared in the Green Bay Press Gazette. ↩
6. The check was made payable to "Elmer A. Madson and Gregory B. Conway, his attorney." ↩
7. In 1980, sec. 104(a)(2) read as follows: (a) IN GENERAL. -- Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include -- * * * (2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness; * * * ↩
8. State law characterizes the nature of a claim. United States v. Mitchell,403 U.S. 190, 197 (1971), quoting Burnet v. Harmel,287 U.S. 103, 110 (1932); Roemer v. Commissioner,716 F.2d 693, 697 (1983), revg. 79 T.C. 398 (1982); see Threlkeld v. Commissioner,87 T.C. 1294 (1986), affd. 848 F.2d 81↩ (6th Cir. 1988). In this instance, the Wisconsin state court found that the City's violation of Mr. Madson's civil rights was a tort-type claim, conclusion with which we agree. 9. For purposes of valuing the tort-type claim, the Wisconsin court properly examined Mr. Madson's loss of wages and of state retirement and social security benefits. See Byrne v. Commissioner,90 T.C. 1000, 1011 n.10 (1988); Metzger v. Commissioner,88 T.C. 834, 857-858 (1987), affd. without published opinion 845 F.2d 1013↩ (3d Cir. 1988). 10. In the context of a suit, if the trier of fact (jury or judge) does not indicate the basis on which the award was grounded, then to ascertain the nature of the damages, it is necessary to examine the allegations contained in the taxpayer's complaints, the evidence presented, and the arguments made in the state court proceeding. Metzger v. Commissioner,88 T.C. at 848; Threlkeld v. Commissioner, supra;Church v. Commissioner,80 T.C. 1104, 1107↩, (1983). In this instance, the complaints, evidence, and arguments made in the state court proceeding and that proceeding's subsequent appeal reveal that both the equal protection claim and the breach of contract claim were raised and discussed. We surmise that petitioners would have us look to the percentages to which the individual claims were discussed on brief and in opinion as a guide to our establishing a proper division of the damages between claims were we to hold that such damages were not properly allocable to a single claim. However, a division of damages based on such percentages is unfair. Often litigants and courts discuss in great detail minor claims while they pay short shrift to those claims which truly support a final decision. 11. See footnote 2, supra.↩