RICHARD C. AND BEATRIZ E. BACA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baca v. Commissioner
Docket No. 32242-88
United States Tax Court
T.C. Memo 1990-632; 1990 Tax Ct. Memo LEXIS 702; 60 T.C.M. (CCH) 1433; T.C.M. (RIA) 90632; December 17, 1990, Filed *702 Decision will be entered for the respondent. Dan R. Young, for the petitioners. William G. Bissell, for the respondent. SCOTT, Judge. SCOTT *2064 MEMORANDUM OPINION Respondent determined a deficiency in and additions to petitioners' Federal income tax for the year 1984 as follows: Additions to Tax, IRC Sections [1] *704 Deficiency
6653(a)(1),
6653(a)(2),
6651,
6661 $ 25,593
$ 1,280
*
$ 1,187 $ 6,398 The issues for decision are: (1) whether $ 120,000 received by Richard C. Baca (petitioner) from Municipal Utilities System (MUS) in exchange for a release and covenant not to further sue, after a judgment was entered by the trial court of Alaska in a civil suit he had brought, was excludable from his income under section 104; and (2) whether petitioners are liable for additions to tax under section 6651(a)(1) (failure to timely file), section 6653(a)(1) and (2) (negligence or intentional disregard of rules and regulations), and section 6661 (substantial understatement of liability). All of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in the Panama Canal Zone at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1984 with the Internal Revenue Service in Ogden, Utah. On April 22, 1982, petitioner filed a complaint against MUS and General Telephone Directory Company in the *705 Superior Court for the State of Alaska seeking recovery for failure to terminate service as ordered, interruption of service, and commission of address change and advertisement. In his complaint petitioner alleged that he was engaged in the business of income tax preparation and planning, doing business as the sole owner of Creative Accounting, that on January 30, 1979, he entered into a contract with MUS wherein MUS was to provide petitioner's business with telephone service, white page listing, and Yellow Page advertising. On July 9, 1982, petitioner filed an Amended Complaint. The relevant portion of the Amended Complaint alleged the following: COUNT ONE BACKKHER
* * * 4. On January 30, 1979, on Plaintiff's request and application, Defendant MUS furnished Plaintiff with telephone service, white page listing and Yellow Page advertisement at Plaintiff's place of business at 410 Second Avenue, Suite 201, Fairbanks, Alaska. A contract was thus formed, created and otherwise executed between Plaintiff and Defendant MUS for the provision of telephone service, white page listing and Yellow Page advertising, *2065 on January 30, 1979. Thereafter, on May 1, 1979, Plaintiff changed his business *706 address to 15-1/2 Mile Old Richardson Highway, North Pole, Alaska. * * * 6. On May 1, 1979, Defendant MUS, by its duly authorized and acting agents wrongfully and willfully failed to terminate said telephone service as orally directed on April 30, 1979. 7. On April 30, 1979, and several times before and thereafter, Plaintiff requested Defendant MUS to terminate service at the 410 Second Avenue, Suite 201 address, but Defendant MUS refused to do so until November 22, 1979. * * * 9. From November 19, 1979, to early 1981, Defendant MUS sent delinquent bills to Plaintiff for the unused, undisconnected line at 410 Second Avenue and threatened to disconnect all service to Plaintiff. * * * 11. On or about July 2, 1981, Plaintiff took a two (2) week vacation from his business. Upon return, on or about July 16, 1981, Plaintiff returned to his office and discovered that his office phone had been disconnected. 12. On or about July 16, 1981, Plaintiff personally appeared at the main office of Defendant MUS to demand restoration of service. Defendant MUS, by and through its duly authorized officers, employees and agents, demanded $ 2,200.00 in unowed money for delinquent *707 charges. Plaintiff refused to pay such sums for unrequested and unused service. Upon Plaintiff's return to his office, he found that his phone service had been restored. 13. On or about July 30, 1981, Defendant MUS, by and through its duly authorized officers, employees, and agents, again disconnected Plaintiff's phone service. 14. On or about October 26, 1981, Plaintiff was finally forced to pay a purportedly delinquent amount of $ 2,200.00 for phone service rendered but unrequested and unused. From July 30, 1981, to October 26, 1981, approximately three (3) months, Plaintiff was without phone service and restoration of said service was only effected upon the coerced payment of unowed charges. 15. The aforesaid overcharges and acts of Defendant MUS by and through its duly authorized officers, employees and agents were breaches of said contract of January 30, 1979. * * * COUNT TWO * * * 17. On April 30, 1979, Plaintiff requested Defendant MUS to insert a change of address in the Fairbanks Telephone Directory for the year of 1980; thereafter, Defendant MUS, acting through its duly authorized officers, employees, representatives and agents, advised Plaintiff that *708 his change of address would appear in the Fairbanks Telephone Directory for the year 1980. 18. Defendant did not change Plaintiff's address as requested and agreed for the year 1980. 19. On or about November 19, 1979, Plaintiff first discovered that his bill from MUS reflected continuing costs for service on the line he had ordered disconnected. Plaintiff appeared at the main office of MUS at 645 Fifth Avenue, Fairbanks, Alaska. Upon Plaintiff's repeated insistence, Defendant MUS finally discontinued service at his former business address on November 22, 1979. However, as previously indicated, at their November 19 meeting, Defendant MUS demanded money for rendered but unrequested services. * * * 21. In July of 1981, Plaintiff attempted to secure identical listing and Yellow Page advertisement service sser ice for the 1982 year. Defendant MUS willfully, wrongfully and maliciously effected termination of said listing and ad service by and through its officers, employees, agents and representatives for nonpayment of said delinquent amount. 22. Aforesaid acts of Defendant MUS were breaches of its January 30, 1982 contract with Plaintiff * * * COUNT THREE * * * 24. *709 The aforesaid acts of Defendant MUS were willful, wrongful and malicious in that Defendant MUS's failure to terminate phone service, interruption of phone service, omission of white page listing and Yellow Page advertising interfered and injured Plaintiff's business relationships with his clients. * * * COUNT SIX * * * 37. Defendants' aforesaid actions violate Plaintiff's rights to due process under the United States Constitution, particularly under the provisions of the Fifth and Fourteenth Amendments of the *2066 United States Constitution, and under the laws of the United States Constitution, and under the laws of the United States Code, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1981, 1983, 1985. 38. Defendants' aforesaid actions violate Plaintiff's rights to due process under the Constitution of the State of Alaska, particularly under Article 1, Sections 1, 3 and 7 and under the laws of the State of Alaska. COUNT SEVEN * * * 41. Defendants' willful, wrongful and malicious omission of Plaintiff's commercial white page listing, termination of Plaintiff's phone service, and omission of Plaintiff's Yellow Page advertisement, *710 were unlawful acts and practices under ALAS. STATS. 45.50.471, 45.50.531 and 45.50.551.
* * * In the Amended Complaint, plaintiff alleged that, as a direct and proximate result of defendants' acts, petitioner suffered and incurred additional phone charges for the period April 30, 1979 to November 22, 1979, in the amount of $ 252.08, additional deposits for phone services in the amount of $ 857, reduction of business in excess of $ 50,000, loss of income in excess of $ 20,000, and additional advertising costs in excess of $ 1,000. Plaintiff also alleged that he was entitled to recover punitive damages of $ 50,000 against each defendant. In a Special Verdict filed May 8, 1984, the jury found defendant MUS had wrongfully failed to disconnect petitioner's telephone service in 1979; had wrongfully, maliciously, and wilfully listed petitioner's address incorrectly in the 1980 telephone directory; had wrongfully disconnected petitioner's telephone; and had wrongfully, maliciously, and wilfully failed to include petitioner's address and telephone number in the 1982 telephone directory. The jury also found that petitioner sustained damages as a result of defendant's wrongful *711 failure to disconnect telephone service in the amount of $ 74.38 with $ 37.19 attributable to petitioner's own negligence or failure to minimize losses; that petitioner sustained damages as a result of defendant's wrongful, malicious, and wilful failure to list petitioner's address correctly in the 1980 directory in the amount of $ 2,437.50; that petitioner sustained damages as a result of defendant's wrongful disconnect of petitioner's telephone in July of 1981 in the amount of $ 150, with $ 75 attributable to petitioner's own negligence or failure to minimize losses; and that petitioner sustained damages as a result of defendant's wrongful, malicious, and wilful failure to include petitioner's address and telephone number in the 1982 telephone directory in the amount of $ 252,312 with $ 63,078 attributable to petitioner's own negligence or failure to minimize losses. In the Final Judgment filed July 23, 1984, the court granted the defendant's motion for remittitur with respect to the award of damages sustained by petitioner as a result of defendant's wrongful, malicious, and wilful failure to include petitioner's address and telephone number in the 1982 telephone directory. The *712 net amount awarded was reduced to $ 75,000. The total amount awarded was $ 77,549.69. Plaintiff was also awarded attorney fees of $ 20,028.37, pre-judgment interest of $ 57,534.21, and costs of $ 7,353. An Amended Final Judgment was filed on August 20, 1984. It reduced the pre-judgment interest award to $ 22,743.86, effective as of the date of the Final Judgment. It also provided that interest would accrue at the rate of 10.5 percent until the judgment was paid. For a consideration of $ 120,000, petitioner on September 20, 1984, signed a Release and a Covenant Not to Further Sue MUS and others (Release). The agreed $ 120,000 was paid by check dated September 24, 1984, made jointly to petitioner and his attorney. From this check petitioner received $ 82,218.37. Petitioner did not report any portion of the amount he received as a result of signing the Release on his income tax return for 1984. Respondent, in his notice of deficiency, included the $ 120,000 received by petitioner in 1984 in his income for that year and allowed a deduction for $ 37,781 for legal fees thereby increasing petitioner's reported income by $ 82,219. The envelope containing petitioner's income *713 tax return for 1984 was postmarked August 16, 1985. The return was received by the Internal Revenue Service on August 20, 1985. Except as otherwise provided by statute, gross income includes "all income from whatever source derived." Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Section 104(a)(2) excludes from gross income "the amount of any damages received (whether by suit or agreement * * *) on account of personal injuries or sickness." Neither the Code nor its legislative history define the phrase "on account of personal injuries." Seay v. Commissioner, 58 T.C. 32, 36 (1972). Section 1.104-1(c), Income Tax Regs., however, provides the following general guidance: The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through *2067 a settlement agreement entered into in lieu of such prosecution.
Petitioner contends that the $ 120,000 received *714 from MUS represents damages received on account of personal injuries. He contends that he received the $ 120,000 in settlement of a suit based on a tort-type right. Respondent contends that the amount received by petitioner was not damages on account of personal injuries and, therefore, is not excludable from gross income. As a prerequisite for exclusion under section 104(a)(2), the damages involved must be derived from a tort or tort-type claim against the payor. Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). Exclusion under section 104(a)(2) is appropriate "if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law." Threlkeld v. Commissioner, 87 T.C. 1294, 1308 (1986), affd. 848 F.2d 81 (6th Cir. 1988) (Fn. ref. omitted). Whether a payment received in settlement of a lawsuit is excludable under section 104(a)(2), depends on the nature, origin, and character *715 of the claim or cause of action which was settled. Threlkeld v. Commissioner, supra at 1297; Seay v. Commissioner, supra at 37. The determination is factual and petitioner bears the burden of proving that the nature of the claim underlying the payment is tort-like. Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affirming a Memorandum Opinion of this Court; Threlkeld v. Commissioner, supra at 1305; Rule 142(a). Where, as here, the settlement agreement lacks express language stating the basis of the payment, it is necessary to determine the intent of the payor in making the payment. Knuckles v. Commissioner, supra at 613. The Release states that petitioner releases and agrees to not bring further suit against MUS -- for any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever at law, in equity, under any compensation act or similar statute, for costs, loss of use, loss of service, expenses, attorney's fees, compensation, consequential damage, loss of consortium or any other thing whatsoever on account of or *716 in any way growing out of, any and all known and unknown personal injury, death and property damage resulting to or to result from or relating to that particular accident occurring on or about May 1, 1979, in the general area of Fairbanks, Alaska, or on account of or related in any way or manner to any other issues arising in the courts out of any related litigation, negotiation or settlement. * * *
The language of the Release is clear that MUS will be free from all claims of petitioner of any nature that might arise out of the failure of MUS to terminate the telephone service of petitioner or any related matter. This language indicates that MUS regarded the settlement payment to be for all the claims which may have been brought by petitioner rather than as compensation for one particular type of claim. The settlement does not contain any allocation among the possible claims. Factors that may be relevant to the characterization of a settlement payment are the allegations contained in the taxpayer's complaint, the evidence presented, and the arguments made in the underlying *717 court proceeding and the intent of the payor. Threlkeld v. Commissioner, supra at 1306; Bent v. Commissioner, 87 T.C. 236, 245 (1986), affd. 835 F.2d 67 (3rd Cir. 1987); Church v. Commissioner, 80 T.C. 1104, 1107 (1983). The record does not contain any information as to the evidence presented or arguments made in the underlying court proceeding nor does it contain any evidence to indicate the basis either party might have been considering for an appeal of the lower court's decision. Only the Complaint, Amended Complaint, Special Verdict with respect to defendant MUS, Final Judgment and Amended Final Judgment are available to indicate the possible character of and reason for the parties entering into the Release. The original Complaint alleges only breaches of contract. Counts One through Three of the Amended Complaint, on which the case was tried, are grounded in contract theory. In Count One, plaintiff alleged that a contract was entered into between plaintiff and defendant MUS. In Count One through Count Three, plaintiff alleged ways in which defendant MUS breached the contract. As a result of the defendant's *718 actions, plaintiff alleged he incurred damages consisting of additional phone charges, additional deposits for phone service, a reduction in business, loss of income, and additional advertising costs. In Count Six, plaintiff alleged violation of his rights under the Fifth and Fourteenth Amendment of the Constitution of the United States, the Civil Rights Act, and the Constitution of the State of Alaska. He alleged the same damages as resulted from the breach of contract alleged in the previous counts. In Count Seven, plaintiff alleged violation of his rights under Alaska statutes. He again alleged the same damages as claimed in the alleged breach of contract. Where an amount is received in settlement of a claim, a taxpayer must show the nature of the *2068 claim settled, but not the validity of his claim. Threlkeld v. Commissioner, supra at 1297; Seavy v. Commissioner, supra at 37. The fact that a taxpayer does not have to establish that his claim was valid does not relieve him from establishing that the settlement payment received was on account of a tort-type *719 claim. This record contains no evidence to show that the allegations in Count Six and Seven of the Amended Complaint were ever pursued by petitioner. There is no evidence that the allegations of Count Six or Seven were considered by MUS when making the payment to receive the Release. The Special Verdict reflects consideration of only the first three counts, those grounded in contract theory. The Final Judgment and Amended Final Judgment similarly address only an award arising out of the breach of contract. The amounts petitioner alleged he suffered as a loss of business and a loss of income represent an injury to his business of income tax preparation, not a personal injury. The alleged losses are evidenced by a loss of profits. Accordingly, any settlement payment that represents a loss of business or loss of income would be in lieu of lost profits, would not represent personal injuries, and would be includable in income. Sec. 61(a). Petitioner argues that damages were based on loss of profits, simply as a means by which to measure the extent of his personal injury. Bent v. Commissioner, supra. Certainly in an appropriate situation a loss of profits *720 can be used to measure the extent of a personal injury. If this fact is shown, the award may be excludable from income. However, here, petitioner has failed to show that any of the payment he received represents an award for personal injury. Petitioner argues that the elements of maliciousness and willfulness are necessary elements in a tortious action of interference with a petitioner's business relationship with his clients. Petitioner states that the jury found the actions of MUS to be malicious and willful, and therefore, that the settlement agreement was entered into as a result of such conduct by MUS. While it is true that MUS' breach of its contract with petitioner may have been willful, malicious, and wrongful, such a breach does not establish either an action for tortious interference with petitioner's business relationship with his clients or that such a tort claim was a basis for the settlement. Black's Law Dictionary defines "tort" as a "private or civil wrong or injury, other than a breach of contract" and "a violation of some duty owing to plaintiff, and generally such duty *721 must arise by operation of law and not by mere agreement of the parties." Black's Law Dictionary 1335 (5th ed. 1979); Thompson v. Commissioner, 866 F.2d 709, 712 (4th Cir. 1989), affg. 89 T.C. 632 (1987). The evidence here does not show that MUS owed petitioner a duty by operation of law. Rather, the damages petitioner suffered were on account of the contract he had entered into with MUS. Petitioner is not granted, by a duty arising by operation of law, the right to have his phone service disconnected, his address listed correctly, advertisement placed correctly, etc. Rather, he is granted such things as a result of his contract with MUS. Since we conclude that petitioner has failed to show that any portion of the settlement payment he received is excludable from his income, we need not discuss respondent's contention that some of the amount he received reimburses him for amounts deducted as business expenses in prior years and for that reason is includable in his income. Any taxpayer who reports his income for the calendar year is required to file a return *722 by April 15 following the close of the calendar year. Secs. 6011(a), 6012(a), 6072(a). Absent a valid extension of time within which to file his return, a taxpayer who files after April 15 is liable for an addition to tax under section 6651(a)(1) unless he can show reasonable cause for failure to timely file. Petitioner's 1984 return was not timely filed and he has not shown that the late filing was due to reasonable cause. Accordingly, we find that petitioner is liable for an addition to tax under section 6651(a)(1). Section 6653(a)(1) imposes an addition to tax of 5 percent of the total amount of the underpayment where any part of the underpayment "is due to negligence or disregard of rules and regulations." Section 6653(a)(2) imposes an addition to tax of 50 percent of the interest attributable to that part of any underpayment which is due to negligence or disregard of rules and regulations. The only explanation petitioner offers for omitting from his reported income the amount he received in settlement from MUS is a letter received from the attorney who represented him in his action *723 against MUS. He contends that he relied on this letter in deciding not to report the amount received for the release. He contends, therefore, that he was not negligent in not reporting this amount as income. For purposes of section 6653(a), negligence is defined as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Reliance on the advice of competent tax counsel fully informed as to the relevant facts may under some circumstances be sufficient to show that a taxpayer is not liable for the addition to tax for negligence. See United States v. Boyle, 469 U.S. 241, 251 (1985). There are, of course, other methods by *2069 which a taxpayer may show that he was not negligent, but that he acted as a reasonable and prudent person under the circumstances. The only evidence that petitioner offered in an attempt to show that he was not negligent was the letter he received from the attorney who represented *724 him in the lawsuit against MUS. The letter contains unsupported representations of facts surrounding the lawsuit against MUS. Petitioner, himself, knew the facts surrounding the lawsuit and therefore must have known the statements in the letter were not true. A reasonable and prudent person, who was aware of the inaccuracies of the letter, as petitioner must have been, would not have relied on the purported advice of the lawyer set forth in the letter. A reasonable and prudent person at least would have followed up the letter with questions to the lawyer regarding the inaccuracies in the letter and the effect of those inaccuracies on the excludability from income of the settlement payment. We conclude that petitioner has not shown that his failure to include the payment he received from MUS in income in 1984 was not due to negligence or disregard of rules and regulations. We sustain respondent's determination of additions to tax under section 6653(a)(1) and (2). Section 6661 provides for an addition to tax if there is a substantial understatement of income tax. There is a substantial *725 understatement if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Petitioners' return showed a tax liability of zero. The deficiency has been determined to be $ 25,593. There has been a substantial understatement of income tax. The imposition of the addition to tax may be reduced where there is substantial authority for the tax treatment of the item or if there was adequate disclosure on the return of the item. Sec. 6661(b)(2)(B). Petitioner did not make any disclosure as to the receipt of the settlement payment on his return. Petitioner has failed to show that there was substantial authority for the exclusion of the settlement payment from his income. The payment was not of damages for personal injury. Sec. 1.6661-3, Income Tax Regs. We sustain respondent's determination of an addition to tax under section 6661. Petitioners in their brief state that there is an issue of whether petitioner is "liable for self-employment tax for the year 1984." However, petitioners make no argument *726 with respect to the "self-employment issue." We therefore assume that there is no issue as to petitioner's "self-employment tax" aside from the amount of his income for the year 1984, which depends on whether the payment he received from MUS is excludable from his 1984 reportable income. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩