GASTON BOUQUETT AND RUBYE BOUQUETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bouquett v. Commissioner
Docket No. 21777-92
United States Tax Court
T.C. Memo 1994-212; 1994 Tax Ct. Memo LEXIS 208; 67 T.C.M. (CCH) 2959; May 12, 1994, Filed *208 Decision will be entered pursuant to Rule 155. Gaston Bouquett and Rubye Bouquett, pro sese. For respondent: Sherri Feuer. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
By separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes for taxable years 1988 and 1989 in the amounts of $ 926 and $ 3,048.98, respectively. After concessions and our order granting petitioners partial summary judgment, [2] the issues for decision are: (1) Whether petitioners are entitled to an additional bad debt deduction in the amount of $ 6,666.00 in 1988, (2) whether petitioners are entitled to a deduction in 1989 for legal expenses in the amount of $ 9,889.76, and (3) whether petitioners *209 may exclude from gross income disability payments received in 1988 and 1989 in the amounts of $ 12,917.00 and $ 47,250.00, respectively. [3]
Some of the facts have been stipulated, *210 and they are so found. The stipulation, together with attached exhibits, is incorporated herein by this reference. Petitioners resided at Dayton, Ohio, when they timely filed their petition herein. Petitioner Gaston Bouquett was practicing as an ophthalmologist in 1985, when he entered into an agreement with an optician, Robert E. Williamson (hereafter Williamson) to purchase an optical shop. Petitioner operated his practice in corporate form, and it was his corporation, Gaston Bouquett, M.D., Inc. (hereafter the corporation) that purchased the shop, which contained equipment and inventory at the time of purchase. Petitioner was the president, chief executive officer, and sole shareholder of the corporation. The parties to the sale agreed that the corporation would pay Williamson a total of $ 25,000 for the business, with a downpayment of $ 5,000 and the sum of $ 20,000 to be paid over a period of 4 years under no particular schedule. Petitioner personally guaranteed the corporate note due to Williamson. Despite the sale in 1985, Williamson continued running the business until sometime in 1986, when he retired. On December 24, 1986, petitioner became disabled as a result *211 of an automobile accident. Some entity, either petitioner or the corporation, began making payments to Williamson in 1987. [4] Petitioner hoped that his physical disability would abate to the point where he could operate the optical business. Eventually, it became evident to petitioner that he would not be able either to practice or run the optical business. Petitioner closed the optical business, and the corporation became defunct in 1988. Petitioner placed the assets of the shop into storage, where they became outdated and worthless and had no resale value. Despite closing his practice in 1988, petitioner, as guarantor, continued paying off the debt due to Williamson. Petitioner claimed his personal payments on the Williamson note as a bad debt expense deduction. Petitioner argues that when *212 the corporation became defunct in 1988, there was no longer a possibility that the corporation could repay its debt to him. Petitioner made payments to Williamson in the amounts of $ 6,666 in 1987, $ 3,889 in 1988, and $ 1,111 in 1989. Respondent contests only the deduction for the payment of $ 6,666, which petitioner has conceded was made in 1987 but was claimed on the 1988 joint return along with payments made in 1988. Respondent argues that petitioner has not established that he personally made the 1987 payments as the guarantor of the corporate note. The year 1987 is not before this Court. Petitioner retained counsel, E.S. Gallon and Associates (hereafter Gallon) to represent him in a hearing in which he received an Ohio worker's compensation award in 1989. Petitioner was awarded the sum of $ 29,669.26 in 1989, less Gallon's fee of one-third of the reward, or $ 9,889.76, for a net of $ 19,779.52. Petitioners claimed a legal expense deduction in 1989 in the amount of $ 10,900, $ 2,860 of which respondent has conceded. [5] Respondent argues that the legal fees in question are not deductible on the grounds that they were incurred for the production of income that is exempt *213 from taxation. Petitioners did not report the worker's compensation award as income on their 1989 return, and respondent does not contend that this payment is not excludable for tax purposes. Petitioner began receiving disability insurance payments in 1988 from the Provident Life and Accident Insurance Company (hereafter Provident). Petitioner received payments totalling $ 12,917 in 1988 and $ 47,250 in 1989. Premium payments on the applicable insurance policies were paid by Gaston Bouquett, M.D., Inc., the corporate entity of petitioner's practice. Coverage under the policies, which offered the insurance to the corporate employees at a group rate, required the employer to pay the premiums directly to Provident, which the corporation did each month. The corporation *214 did not claim deductions for any premium payments on behalf of the corporation's employees, because the employees repaid the corporation for these outlays. Petitioner further claims that he personally recompensed the corporation in cash for its outlays for his insurance coverage. Petitioners initially included the disability payments in gross income on their joint returns for 1988 and 1989. Petitioners subsequently filed amended returns claiming entitlement to refunds in the amounts of $ 4,784 in 1988 and $ 8,229 in 1989 on the grounds that this income is exempt from taxation. Respondent disputes petitioners' claims for refund, arguing that the exclusion provided under section 104(a)(3) for payments from accident or health insurance does not apply. It is well settled that deductions are matters of legislative grace, and petitioners bear the burden of proving entitlement to any deductions claimed on a return and of proving that respondent's determinations are erroneous. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Welch v. Helvering, 290 U.S. 111 (1933). Bad debt. Petitioner argues that *215 the payments to Williamson in 1987 in the amount of $ 6,666 are deductible in 1988, the year the debt owed to him from the corporation became worthless. In order to be entitled to a bad debt deduction under section 166(a)(1), a taxpayer must show that a debt became wholly worthless in the year in which claimed. The year the debt became worthless is not in issue. Respondent has allowed bad debt deductions for petitioner's payments in 1988 and 1989, thus implicitly conceding that a debt owed from the corporation to petitioner became worthless in 1988. Rather, respondent argues that petitioner has not substantiated his claim that it was he, and not the corporation, who made the payments in 1987, before the corporation became defunct. We agree with respondent. Although petitioner has established that Williamson received $ 6,666 in payments in 1987, he has offered no evidence to prove that he made the 1987 payments personally. Petitioner failed to prove entitlement to deduct, on his 1988 return, the 1987 payments. Legal expenses. At issue is the deductibility of legal expenses incurred to secure an award of worker's compensation. Petitioners did not report their worker's *216 compensation income in 1989. Section 104(a)(1) excludes amounts received under worker's compensation acts as compensation for personal injuries or sickness. To the extent that attorney's fees are allocable to exempt income, the fees are nondeductible expenses under section 265(a)(1). Church v. Commissioner, 80 T.C. 1104 (1983). Thus, petitioners are not entitled to a deduction for the legal fees at issue. Disability income. Petitioners filed amended returns for 1988 and 1989 in which they claimed refunds in the amounts of $ 4,784 and $ 8,220, respectively. Petitioners allege that the disability income they received from Provident in both years is exempt from taxation under section 104(a)(3). Respondent disputes that this income is exempt on the grounds that petitioners have not established that either of the petitioners was the insured, was disabled, or that the premiums for the disability policies were paid by the petitioners and not by the employer. Petitioner argues that this issue is not properly before the Court, since respondent did not raise the issue in the notice of deficiency. As a preliminary matter, this issue is properly before *217 the Court, as petitioners themselves raised the issue by virtue of their claims for refund. Further, we find that petitioner husband was insured under the Provident disability plans, and that petitioner was indeed disabled. That leaves the question of whether petitioner established that he fully compensated the corporation for its outlays of the premium payments which insured petitioner. Section 104(a)(3) provides an exclusion from gross income of amounts received through accident and health insurance for personal injury or sickness. The exclusion, however, is inapplicable to amounts received by an employee to the extent that such amounts are attributable to contributions of the employer that were not included in the gross income of the employee or amounts attributable to contributions paid by the employer. Sec. 104(a)(3); sec. 1.104-1, Income Tax Regs.
Petitioner argues that the disability income should be excluded from gross income, because he reimbursed the corporation for the premium payments by making cash deposits into the corporate account. He did not reimburse the corporation by check. Petitioner has not presented any direct evidence of any personal cash outlays for *218 this purpose. However, the record contains substantial evidence that the policy clearly called for the corporation to be nothing more than an agent or conduit which paid the premiums nominally and then collected the premium payments from the employees themselves. Employees signed agreements to recompense the corporation for these disbursements. Petitioner presented this evidence in an unrelated action he brought against Provident Life & Accident Insurance Company in the United States District Court in the Southern District of Ohio. That action was brought because Provident had refused to pay the disability benefits to petitioners. Petitioners sought to establish that the Employee Retirement Income Security Act was inapplicable to his right to collect disability payments because he had made all the payments, and the case was dismissed in his favor. Provident became obliged to make the disability payments to petitioner. We found this evidence to be reliable and petitioner's testimony that he reimbursed the corporation to be credible. We hold that petitioners have satisfied their burden of proving entitlement to the exclusion, and the disability payments from Provident in the *219 amounts of $ 12,917 in 1988 and $ 47,250 in 1989 are excludable from their gross income. Decision will be entered pursuant to Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As a result of concessions by respondent and an order by this Court, dated September 9, 1993, partially granting petitioners' motion for summary judgment, petitioners are entitled to the following Schedule A deductions: In 1988, petitioners are entitled to a legal expense deduction in the amount of $ 5,589 and a bad debt deduction in the amount of $ 3,389, subject to the 2 percent adjusted gross income limitation. In 1989, petitioners are entitled to deductions for legal expenses in the amount of $ 2,860, bad debt expenses in the amount of $ 1,111, and interest on a commercial loan in the amount of $ 1,750, also subject to the 2 percent adjusted gross income limitation.↩
3. Petitioners included these amounts in their returns for the years involved and subsequently filed claims for refund prior to the mailing of the notices of deficiency.↩
4. At trial, petitioner rarely explained whether at particular times he was acting individually or as an employee of the corporation. Whether it was petitioner or the corporation who made these payments in 1987 is at issue.↩
5. The discrepancy between the remaining nonconceded legal expenses claimed on the return, $ 8,040, and the Gallon fees of $ 9,889.76, has not been explained to the Court. Since the only evidence pertains to the Gallon fees, we assume $ 9,889.76 is in issue.↩