T.C. Summary Opinion 2016-65

UNITED STATES TAX COURT

JULIE TISHKOFF, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16337-15S.               Filed October 6, 2016.

Julie Tishkoff, pro se.

<u>Nicholas R. Rosado</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

---

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated March 30, 2015, respondent determined a deficiency of $22,905 in petitioner's 2012 Federal income tax, a section 6651(a)(1) addition to tax of $5,154, a section 6651(a)(2) addition to tax of $3,092, and a section 6654(a) addition to tax of $384.

After concessions, the issues for decision are: (1) whether petitioner may exclude $84,177 from gross income relating to proceeds received from the settlement of a lawsuit; (2) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure to timely file her 2012 Federal income tax return; (3) whether petitioner is liable for the section 6651(a)(2) addition to tax for failure to timely pay income tax for 2012; and (4) whether petitioner is liable for the section 6654(a) addition to tax for failure to pay estimated income tax for 2012.[2]

---

[1](...continued)
Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner concedes that she received settlement proceeds of $84,177 in 2012 and that she did not file a Federal income tax return for 2012.

Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. Petitioner resided in California when the petition was timely filed.

Petitioner worked as an employee for Wells Fargo from January 2002 until June 2009. In 2009 petitioner was working as the administrative assistant to the "market president". Petitioner's employment was terminated in June 2009.

In September 2009 petitioner filed a complaint with the U.S. Department of Labor alleging that Wells Fargo had violated whistleblower protection provisions of the Sarbanes-Oxley Act of 2002. Wells Fargo denied the claim in January 2010 and supplemented its response in April 2010.

In June 2011 petitioner filed a complaint against Wells Fargo in the Superior Court of California, County of San Francisco, alleging four causes of action: (1) wrongful termination for whistleblowing; (2) hostile work environment harassment; (3) intentional infliction of emotional distress; and (4) whistleblower retaliation. In her complaint petitioner alleged that her employment was wrongfully terminated in retaliation for her complaining about Wells Fargo's illegal and fraudulent business practices, claiming that Wells Fargo had engaged in a "campaign of retaliation * * * intended to coerce her resignation" which

escalated from 2005 to 2009. Petitioner's complaint detailed the alleged retaliation as harassment which included "attacking her job performance, issuing unwarranted discipline, public criticism and humiliation, removal of job duties and harassing her due to her protected complaints" as well as "constant insults, verbal assaults, screaming, yelling * * * and false accusations of misconduct".

Petitioner's complaint further alleged that she "suffered severe emotional distress and physical injuries and has necessarily expended sums in the treatment of such injuries". The complaint alleged that the emotional distress included anxiety, depression, trouble focusing, and weight gain and that petitioner had to seek therapy and take medication for treatment of this emotional distress. Petitioner's complaint did not provide further detail about the type or extent of her alleged physical injuries and physical sickness.[3]

---

[3]At trial petitioner asserted that because of the alleged abusive treatment by her employer, on one occasion she fell and twisted her ankle and on another occasion she cut her thumb while slicing a bagel. Petitioner asserts that both injuries required doctor's visits and that the cut on her thumb required stitches and left a scar. Petitioner also asserts that the emotional distress caused her to gain about 75 pounds, have a fast heartbeat and panic attacks, and have high blood pressure. Petitioner asserts she also had to visit a doctor for these medical problems. Petitioner asserts she did not have a prior medical history of these ailments. Petitioner also asserted in her petition that the emotional distress caused her to have severe headaches, throw up, and suffer pain and nausea and that she attempted suicide and "has the scars to prove it."

Petitioner and Wells Fargo engaged in voluntary mediation and reached a settlement. The agreement, titled "Conditional Settlement Agreement and Mutual Release", provided that Wells Fargo denied all of petitioner's claims and that she would receive $200,000 in full settlement and release of all of her claims against Wells Fargo. Of that $200,000 settlement amount, after attorney's fees and litigation costs, petitioner received $28,059 (before payroll taxes) for lost wages and $84,177 for "alleged emotional distress", as specifically described by the settlement agreement.[4]

Petitioner did not file a timely Federal income tax return for 2012, nor did she request an extension. Petitioner also did not file a Federal income tax return for 2011.[5] Petitioner paid $13,514 in Federal income tax during the year as income tax withheld for 2012. The Internal Revenue Service (IRS or respondent) prepared a substitute for return for petitioner for the 2012 tax year under section 6020(b). This substitute for return included the $84,177 of settlement proceeds in

---

[4]Petitioner received a check from Wells Fargo on January 25, 2012, for $84,177 for the "alleged emotional distress". Wells Fargo reported this payment via Form 1099-MISC, Miscellaneous Income.

[5]Respondent submitted as evidence Exhibits 6-J and 7-J, petitioner's account transcripts for 2011 and 2012, showing that no tax return was filed for either year. Petitioner also admitted at trial that she did not file a tax return for either year. The account transcript for 2011 shows that petitioner does not owe any tax for that year.

petitioner's taxable income as "other income" and was mailed to petitioner in a notice dated December 22, 2014.[6] The IRS included this substitute for return with the notice of deficiency dated March 30, 2015.

Petitioner timely filed a petition for redetermination on June 24, 2015. After filing her petition, petitioner provided respondent with a Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for 2012. This delinquent return was prepared by a certified public accountant and dated November 4, 2015. On her Form 1040EZ petitioner reported $78,482 in wages and did not include the $84,177 settlement proceeds in her taxable income.

## Discussion

### I.     Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner did not allege

_____

[6]The substitute for return calculated an income tax liability of $36,419 less income tax withheld of $13,514, resulting in a tax deficiency of $22,905.

or otherwise show that section 7491(a) applies.  See sec. 7491(a)(2)(A) and (B).  Therefore, petitioner bears the burden of proof.  See Rule 142(a).

In unreported income cases, the Commissioner must base the deficiency on some substantive evidence that the taxpayer received unreported income.  Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985).  If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer.  The parties stipulated to a Form 1099-MISC issued by Wells Fargo, and petitioner confirmed receipt of the settlement proceeds.  Since petitioner acknowledges receipt of the settlement proceeds, the only issue before us is whether the settlement proceeds are excludable under section 104(a)(2).  See Hardy v. Commissioner, 181 F.3d at 1004; Rapp v. Commissioner, 774 F.2d at 935.

II.     Proceeds From Settlement Agreement

Generally, gross income includes all income from whatever source derived.  See sec. 61(a); sec. 1.61-1(a), Income Tax Regs.  The scope of section 61(a) is broad, and exclusions from income are narrowly construed.  See Commissioner v. Schleier, 515 U.S. 323, 328 (1995); United States v. Burke, 504 U.S. 229, 248 (1992); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).  The

taxpayer must demonstrate that she is within the clear scope of any statutory exclusion. See Commissioner v. Schleier, 515 U.S. at 336-337; Burke, 504 U.S. at 233; Simpson v. Commissioner, 141 T.C. 331, 338-339 (2013), aff'd, __ F. App'x __, 2016 WL 4207982 (9th Cir. Aug. 10, 2016). Section 61(b) indicates that items specifically excluded from gross income are listed in part III, sections 101-140.

Damages (excluding punitive damages) received for personal physical injuries or physical sickness may generally be excluded from gross income. Sec. 104(a)(2).[7] Although emotional distress is not by itself considered a physical injury or physical sickness, "damages for emotional distress attributable to a physical injury or physical sickness" qualify as damages excludable from income under section 104(a)(2). Sec. 1.104-1(c)(1), Income Tax Regs. Stress-induced sickness does not qualify; the personal physical injury or personal physical sickness must instead be the cause of the stress. Prasil v. Commissioner, T.C. Memo. 2003-100, 2003 WL 1844811, at *4. According to the legislative history of section 104(a)(2), emotional distress includes symptoms caused by stress such as "insomnia, headaches, and stomach disorders". Id. at *3 (citing H.R. Conf. Rept. No. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56).

---

[7]The Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1605(a), 110 Stat. at 1838, amended sec. 104(a)(2) to limit the exclusion, inter alia, to "personal physical injuries or physical sickness".

When damages are received pursuant to a settlement agreement, the nature of the claim that was the basis for settlement, and not the validity of the claim, controls whether the damages are excludable under section 104(a)(2).  Burke, 504 U.S. at 237; see also Bagley v. Commissioner, 105 T.C. 396, 406 (1995) ("[T]he critical question is, in lieu of what was the settlement amount paid?"), aff'd, 121 F.3d 393 (8th Cir. 1997).  If the settlement agreement lacks an express statement of what the settlement amount was paid to settle, we look at the intent of the payor, which we determine on the basis of all the facts and circumstances of the case, including the complaint that was filed and the details surrounding the litigation.  Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. 116, 126-127 (1994), aff'd in part, rev'd in part and remanded on another issue, 70 F.3d 34 (5th Cir. 1995).  The Court is not required to accept a taxpayer's self-serving testimony asserting that there was a physical injury or physical sickness.  Prasil v. Commissioner, 2003 WL 1844811, at *4.

Petitioner asserts that the payor, her former employer, intended these proceeds to compensate her for the physical injuries and physical sickness she suffered from the alleged abuse.  Petitioner asserts that because of the stress, on one occasion she was "rushing" and fell and twisted her ankle, which began

bleeding, and on another occasion she cut her thumb while slicing a bagel. Petitioner asserts that she had to visit the doctor for both incidents and that the cut on her thumb required stitches and left a scar. Petitioner asserted in her petition that the emotional distress caused her to have severe headaches, throw up, suffer pain and nausea, and attempt suicide, which left scars. Petitioner also asserts that the emotional distress caused her to gain excessive weight, have a fast heartbeat, suffer from panic attacks, and have high blood pressure. Petitioner asserts that she had to visit a doctor for all of these ailments, which are "all documented in my medical history", and that she did not have a prior history of high blood pressure.

As indicated, petitioner received the damages pursuant to a settlement agreement. The agreement states that the payment of $84,177 is for "alleged emotional distress". The agreement does not refer to physical injuries or physical sickness. Since the settlement agreement does not refer to physical injuries or physical sickness, we look to the complaint and other details surrounding the settlement. See Burke, 504 U.S. at 237; Knuckles v. Commissioner, 349 F.2d at 613; Bagley v. Commissioner, 105 T.C. at 406; Robinson v. Commissioner, 102 T.C. at 126-127.

In addition to the settlement agreement and petitioner's testimony, we look to the complaint to assist in determining the payor's intent in the payment of the

$84,177 settlement.[8] The complaint states in several places that petitioner "suffered physical and mental injuries and has necessarily expended sums in the treatment of such injuries". The complaint, however, does not provide details about the type or extent of these physical injuries. Petitioner alleges that she suffered anxiety, depression, trouble focusing, and weight gain, which are symptoms of emotional distress damages for which are not excludable in the absence of personal physical injury or physical sickness. The complaint did not detail any of the physical injuries or sickness that petitioner testified about, such as a sprained ankle, a cut thumb, or high blood pressure. Petitioner's testimony at trial is the sole evidence of any physical injury or physical sickness, and we will not rely solely on this testimony. See Knuckles v. Commissioner, 349 F.2d at 613; Robinson v. Commissioner, 102 T.C. at 126-127; Prasil v. Commissioner, 2003 WL 1844811, at *3-*4.

On the basis of this entire record it appears more likely that, to the extent petitioner suffered personal physical injury or personal physical sickness, that injury or sickness was the result of her emotional distress, than that the emotional distress was caused by her physical injuries and physical sickness. Thus,

---

[8]The payor, Wells Fargo, did not call any witnesses to testify, and petitioner did not present any other witnesses or provide other evidence of the payor's intent.

petitioner's claims of physical injury and physical sickness are not the type for which damages qualify for income exclusion under section 104(a)(2).  See Prasil v. Commissioner, 2003 WL 1844811, at *4; sec. 1.104-1(c)(1), Income Tax Regs.[9]

On the basis of this record there is insufficient evidence to show that the settlement proceeds were intended to compensate petitioner for personal physical injuries or physical sickness.  See sec. 104(a)(2); sec. 1.104-1(c)(1), Income Tax Regs.

III.    Section 6651(a) Additions to Tax

A.    Failure To Timely File Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (including extensions) unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect.[10]  Section 7491(c) provides that the Commissioner has the burden of production in any Court

---

[9]Sec. 104(a)(2) also excludes damages not in excess of the amount paid for medical care (described in sec. 213(d)(1)(A) or (B)) for emotional distress.  Sec. 1.104-1(c)(1), Income Tax Regs.  Petitioner has not provided any receipts or other proof of medical expenses incurred because of the emotional distress or provided testimony estimating the amounts so expended.

[10]If the Secretary makes a return for the taxpayer under sec. 6020(b), it is disregarded for purposes of determining the amount of the addition to tax under sec. 6651(a)(1), but it is treated as a return filed by the taxpayer for purposes of determining the amount of the addition to tax under sec. 6651(a)(2).  Sec. 6651(g).

proceeding with respect to liability for an addition to tax. The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that imposing the penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Respondent has satisfied his burden of production under section 7491(c) by introducing account transcripts reflecting that petitioner did not file a return and petitioner's testimony at trial that she did not timely file a return and did not prepare a Form 1040EZ for 2012 until after filing the petition in this case.[11] See sec. 6651(a)(1); Higbee v. Commissioner, 116 T.C. at 446.

B.    Failure To Timely Pay Addition to Tax

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on the taxpayer's return on or before the date prescribed unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect.[12] The section 6651(a)(2) addition to tax applies only when an

---

[11]Petitioner's Federal income tax return for 2012 was due by April 15, 2013, with no extension requested. If petitioner had timely requested and been granted an extension, she would have an extended due date of October 15, 2013. See secs. 6072, 6081. Petitioner provided a return dated November 4, 2015, more than two years after the original due date.

[12]The amount of the addition to tax under para. (2) of sec. 6651(a) reduces the amount of the addition to tax under para. (1) for any month to which an

(continued...)

amount of tax is shown on a return filed by the taxpayer or prepared by the Secretary. Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170 (2003), aff'd without published opinion, 2004 WL 7318960 (3d Cir. 2004). When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may not be imposed unless the Secretary has prepared a substitute for return that satisfies the requirements of section 6020(b). Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

Respondent has shown, and petitioner does not dispute, that the only Federal income tax she paid for 2012 was the amount withheld for income tax, which is approximately one-third of the total tax due for the year. Thus petitioner did not meet her income tax obligation for 2012. Respondent has established that the Secretary prepared a substitute for return that satisfies the requirements of section 6020(b) by providing a return for 2012 prepared for petitioner and sent to her in the notice dated December 22, 2014. Thus respondent has met the burden of production under section 7491(c). See sec. 6651(a)(2); Wheeler v. Commissioner, 127 T.C. at 210; Cabirac v. Commissioner, 120 T.C. at 170; Higbee v. Commissioner, 116 T.C. at 446.

---

[12](...continued)
addition to tax applies under both paragraphs. Sec. 6651(c)(1).

C.     Exceptions to Section 6651(a) Additions to Tax

Reasonable cause and the absence of "willful neglect" is a defense to the section 6651(a)(1) and (2) additions to tax. "Willful neglect" means a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 246 (1985). "The determination of whether reasonable cause exists is based on all the facts and circumstances." Ruggeri v. Commissioner, T.C. Memo. 2008-300, 2008 WL 5411919, at *2.

A taxpayer meets the reasonable cause exception if she shows that she "exercised ordinary business care and prudence". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. This determination is factual, and the burden of proof is on the taxpayer. Merriam v. Commissioner, T.C. Memo. 1995-432, 1995 WL 522813, at *11, aff'd without published opinion, 107 F.3d 877 (9th Cir. 1997). Reasonable cause has been found not to exist when the taxpayer claims the failure to file or pay the tax was due to being "too busy", overworked, dealing with personal affairs such as an automobile accident, or overwhelmed by business and financial affairs. See Crocker v. Commissioner, 92 T.C. 899, 908-909 (1989); Odend'hal v. Commissioner, 80 T.C. 588, 618 (1983), aff'd and remanded, 748 F.2d 908 (4th Cir. 1984); Merriam v. Commissioner, 1995 WL 522813, at *11.

A taxpayer is excused for reasonable cause to the extent the taxpayer shows she "exercised ordinary business care and prudence" in trying to pay her tax liability and either could not pay or would suffer "undue hardship" if she paid her tax when due. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. "Undue hardship" must be more than an "inconvenience" to the taxpayer; it requires that she had the "risk of a substantial financial loss resulting from making the tax payment on time." Merriam v. Commissioner, 1995 WL 522813, at *13.

Petitioner asserts that she did not file a Federal income tax return for 2012 or pay her income tax due because she was unemployed, had lost her apartment and was moving frequently, having lived in "about ten or twelve different places" in a few years. Petitioner also referred to a fire but did not provide details. Petitioner did not mention efforts to comply with her tax return filing and payment obligations until long after tax was due, asserting at trial: "I've asked my accountant to get me caught up". Petitioner, by not attempting to comply with her tax return filing and payment obligations, did not exercise ordinary business care and prudence in attempting to meet those obligations. Petitioner's assertion that she was overwhelmed by her living situation does not constitute reasonable cause. See Crocker v. Commissioner, 92 T.C. at 908-909; Odend'hal v. Commissioner, 80 T.C. at 618; Ruggeri v. Commissioner, 2008 WL 5411919, at *2; Merriam v.

Commissioner, 1995 WL 522813, at *11; sec. 301.6651-1(c)(1), Proced. &

Admin. Regs.

Petitioner claims she was unemployed for a time although the exact

timeframe is not clear.  Although unemployment could be a financial hardship,

petitioner did not provide further detail about her financial situation when income

tax was due and did not demonstrate that she would have had a risk of substantial

loss if she had paid her tax on time.  Thus, petitioner has not shown undue

hardship, and we do not find that she demonstrated reasonable cause for her

failure to pay her tax when due.  See Merriam v. Commissioner, 1995 WL 522813,

at *13; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Since petitioner did not demonstrate that she has a valid defense against her

failures to file her 2012 Federal income tax return and pay her 2012 Federal

income tax due on time, we uphold the additions to tax under section 6651(a)(1)

and (2).

IV.    Section 6654(a) Addition to Tax

Section 6654(a) imposes an addition to tax on a taxpayer who underpays her

estimated income tax unless an exception applies.  See sec. 6654(e).  The section

6654(a) addition to tax is determined by applying the underpayment rate

established under section 6621 to the amount of the underpayment[13] for the period of the underpayment.[14] This addition to tax under section 6654 is mandatory unless the taxpayer can place herself under one of the computational exceptions provided in that section. Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960).

Section 6654(e) provides two mechanical exceptions to the applicability of the section 6654 addition to tax.[15] First, the addition is not applicable if the tax shown on the taxpayer's return for the year in question (or, if no return is filed, the taxpayer's tax for that year), reduced by any allowable credit for wage withholding, is less than $1,000. Sec. 6654(e)(1). Second, the addition to tax is not applicable if the taxpayer's tax liability for the preceding taxable year was zero. Sec. 6654(e)(2).

---

[13]"[A]mount of the underpayment" means the excess of the required installment over the amount, if any, of the installment paid on or before the due date for the installment. Sec. 6654(b)(1).

[14]The period of the underpayment runs from the due date for the installment to the earlier of the 15th day of the 4th month following the close of the taxable year or with respect to any portion of the underpayment, the date on which such portion is paid. Sec. 6654(b)(2).

[15]Sec. 6654(e)(3) provides limited situations in which the Secretary can waive the addition to tax, none of which are applicable here.

With respect to the second mechanical exception, on the basis of the account transcript for 2011 petitioner did not owe any tax for that year, despite not filing a return.  Therefore, petitioner's tax liability for the preceding year was zero, and she falls under the second mechanical exception.  We conclude that the addition to tax under section 6654 does not apply for 2012.  See id.; Grosshandler v. Commissioner, 75 T.C. at 21; Estate of Ruben v. Commissioner, 33 T.C. at 1072.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.